[No. 15420.   Department Two.   March 17, 1920.]

JOHN D. HUDSON et al., Respondents and Cross-
Appellants, v. BRADFORD E. BEERS et al.,
Appellants.[1]

CANCELLATION OF INSTRUMENTS (6, 10)—EXCHANGE OF PROPERTY
(3)—RESCISSION—FRAUD—ESTOPPEL.  A conveyance in consideration
of territorial rights for the exclusive sale of a patent gas burner will
not be set aside for fraud, where it appears from plaintiff's testimony
that the representations made to him were not false nor relied
upon, that he made his own investigation, and did not offer to
rescind for nearly a year, and until long after discovery of the
conditions complained of.

Cross-appeals from a judgment of the superior court
for Spokane county, Hurn, J., entered November 2,
1918, upon findings in favor of the plaintiff, subject to
certain deductions, in an action to cancel a deed.  Re-
versed on defendants' appeals.

King & Kerr, for appellant Beers.

Stephens & Jack, for appellant Bagley.

R. L. Campbell and W. B. Mitchell, for respondents
and cross-appellants.

MOUNT, J.—This action was brought by the plain-
tiffs to rescind a sale of certain lots in the city of
Spokane upon the ground of fraudulent representa-
tions made by the defendant Beers to the plaintiffs,
and that, relying upon these fraudulent representa-
tions, they transferred their property to the defendant
Beers.  The defendant Bagley was made a party be-
cause he purchased the property from Beers after the
transfer by the plaintiffs to Beers.  It is alleged that
Bagley was not an innocent purchaser for value in
good faith.  On a trial of the case, the court concluded

[1]Reported in 188 Pac. 454.

that the sale was fraudulent as to the plaintiffs; that Bagley was not an innocent purchaser from Beers and wife, but that he had paid $500 on the purchase price and paid some taxes, and was therefore given a lien for the purchase price and taxes after deducting certain rent. The defendant Beers and wife have appealed from the judgment finding fraud. Bagley has appealed from that part of the decree finding that he was not an innocent purchaser; and the plaintiffs Hudson have appealed from that part of the judgment giving Bagley a lien upon the property for the purchase money paid by him.

In view of the conclusion which we have reached upon the appeal of Beers and wife, it will not be necessary to consider the other two appeals. The facts as shown by the record are, in substance, as follows: Beers and wife were the owners of letters patent for a device known as "The Simplex Water Gas Burner." Mr. Beers, in the early part of the year 1917, was demonstrating this burner in the city of Spokane for the purpose of selling territorial rights. Mr. Hudson became interested in this burner. He watched and assisted in its demonstration for two or three weeks, and finally concluded to purchase certain territorial rights by trading to Mr. Beers therefor the two lots in question, upon which there was a dwelling house, including, also, with the lots and dwelling house certain household goods. This sale was consummated on February 14, 1917. After the sale was completed, and Mr. Hudson and his wife had executed a deed for their lots and dwelling house and a bill of sale of the household goods, and after Mr. Beers had assigned the territorial rights for certain states to Mr. Hudson, Mr. Hudson then, upon his own account, proceeded to demonstrate the burner and to offer for sale on his own account certain territorial rights. He sold the rights of Spokane county; he

then went to Seattle and demonstrated his burner there for a short time; then he went to Tacoma and demonstrated the burner in Tacoma and sold the county of Pierce; he then went to Butte, Montana, and demonstrated the burner there; and then he went to Watonga, in Oklahoma. During the time he was exhibiting this burner and demonstrating it to prospective customers in these different places, the burner would frequently not operate properly. The result was that he returned to Spokane, and in February of 1918, brought this action to rescind the sale upon the ground of fraudulent representations made by Beers and relied upon by him. On the trial of the case, he offered in evidence some printed circulars and blueprints which he testified were used by Mr. Beers in making the sale to him. One of these circulars stated that:

"The Simplex Water-Gas Burner is a scientifically and specially constructed burner, made purposely for burning ordinary WATER and cheapest grade of KEROSENE (or coal oil) as a fuel—by combining the gasses generated from the two liquids to produce an ideal fire for heating and cooking.

"The flame is one of the hottest known outside of the oxyacetylene flame, and is absolutely free from soot or smoke. Can be lighted in one minute, and extinguish instantly. It is perfectly safe (we offer $100 to anyone who can explode it without using powder or dynamite). Fits any stove without any alterations whatever. Can be installed in five minutes or taken out in one minute.

"The fuel container can be placed any distance away, or high or low, without making any difference in its operation.

"It generates its own oxygen from the water, and therefore requires no draft or outside air; it therefore burns steadily and the combustion is perfect. Draft burners must fluctuate because drafts are bound to fluctuate, and the Simplex succeeds where draft burners have failed. We get as much oxygen from one gal-

lon of water as a draft burner or ordinary coal or wood fire can get from 3300 gallons of air, and besides, we get the benefit of the hydrogen to add fuel to and intensify the heat of our flame."

Mr. Hudson, in his testimony, did not show that there were any other representations than those contained in the circulars and blueprints which were about the place during the demonstration before the time of his purchase of the territorial rights. He testified that the burner was not practical; but we are convinced from the record before us that whatever of failure there was of the burner was caused by reparable defects in the burner which Mr. Hudson was using in his demonstrations. He admitted that upon the witness stand. It is plain from all the evidence that, with a burner in repair, it would do the things claimed for it by Mr. Beers. In fact, the evidence shows without dispute that there were other burners of this same kind in Spokane that had been used a year or more at the time of the trial, and that these burners were perfectly satisfactory and did the work claimed for them. So we are satisfied from the evidence in the case that there was no showing that these burners were not practical when in proper repair, and that there were no fraudulent representations relied upon by Mr. Hudson. Furthermore, according to his own evidence he watched, for a period of two or three weeks, the operation of the burner which was being used by Mr. Beers for demonstrating purposes in Spokane. He assisted in the demonstrations. After he purchased the territorial rights, he demonstrated the burner himself in different places in this state and in Montana and Oklahoma. While he at different times made some complaint of the fact that the burner did not operate properly, he attributed it to the fact that some parts of the burner were not properly adjusted or were out of re-

pair.  He did not then offer to trade back or to rescind
his sale until nearly a year after it was made; and if
we may concede, for the purposes of this case, that he
was not able to make sales as fast as he had anticipated,
and for that reason paid more for his territorial rights
than they were really worth, that was a chance which
he himself took when he purchased the territorial
rights from Mr. Beers.  We think it is plain from all
the facts in the case that, at the time of the purchase,
he was cognizant of the construction of the burner
and the method of operation, and knew as much about
the details of it as Mr. Beers.  In fact, there is evi-
dence in the record that he himself had attempted to
perfect a burner of some character and that, when he
saw this burner, he concluded that this was the burner
he wanted.  It follows, we think, from his own evidence,
that he did not rely upon the representations made by
Mr. Beers before the sale, but that he investigated the
machine thoroughly before the sale, was satisfied there-
with, and cannot now be heard to say that he relied
upon the representations of Mr. Beers.  In the case of
*Meyer v. Maxey,* 92 Wash. 73, 158 Pac. 995, in discuss-
ing this point we said:

"Even assuming that every representation charged
by respondents had been made by appellant, it is mani-
fest that the case falls within the rule announced by
Pomeroy and reiterated in many of our decisions to
the effect that, where the party charging misrepresen-
tation institutes inquiry for himself, has recourse to
the proper means of obtaining information and actu-
ally learns the real facts, or could have done so by
availing himself of the means of information at hand,
he cannot claim that he did not learn the truth and
was misled by the representations. . . .  While we
have gone as far as any court in relieving against in-
ducing fraud and artifice, we have never gone so far
as to relieve a purchaser of all responsibility for a
failure to observe facts and conditions as much within

his reach as that of the seller, especially where he has professedly undertaken an examination for himself with every opportunity to make it as complete as he pleased."

Mr. Hudson under the facts in the case, falls squarely within that rule. He not only was in a position to know all the facts before he made the purchase, but, after he made the purchase, for nearly a year he demonstrated the machine in other parts of the country, and sold territory. He cannot now be heard to say that he relied upon the representations made by Mr. Beers to him. It is true that, two or three months prior to the time the action was brought, Mr. Hudson became sick while he was in Oklahoma, and for that period of time was probably unable to demand a rescission; but he had ample opportunity prior to the time he became sick to learn all about the machine which he had purchased and the territorial rights under the patents; and it was his duty, upon discovering fraud, if there was any, to immediately rescind his contract. This he did not do, concededly, for a period of nearly one year. We are of the opinion that there were no fraudulent representations made by Mr. Beers; but, if we may concede that there were fraudulent representations, they were discovered by Mr. Hudson long prior to the time when he brought this action and were waived because he made no demand for rescission on that account. We are of the opinion, therefore, that the trial court erred in finding that the sale was induced by fraud and in entering a decree setting aside the sale.

The judgment is reversed and the cause remanded with instructions to dismiss the action.

HOLCOMB, C. J., BRIDGES, and PARKER, JJ., concur.