[No. 5849.  Decided April 5, 1906.]

F. M. VAN HORN *et al., Appellants,* v. JOHN O'CONNOR *et al., Respondents.*[1]

VENDOR AND PURCHASER—RESCISSION FOR FRAUD OF VENDOR—MIS-REPRESENTATIONS—EXPRESSIONS OF OPINION—INSPECTION BY VENDEE—NONSUIT.  In an action by a vendee of a half section of farm land, to recover damages for the fraud of the vendor in misrepresenting the number of tillable acres of land, a nonsuit is properly granted upon the testimony of the plaintiff, where it appeared therefrom that he had twice inspected and driven over the land, that the vendor and his agent, who were strangers to him, had represented that there were 240 acres of land under cultivation, and twenty-five or thirty more that could be cultivated, and it did not appear that the cultivated land had ever been measured, and the purchaser received all the land shown him, although the vendor said that he thought that part of the bad land included within the fence was beyond the boundary line.

Appeal from a judgment of the superior court for Lincoln county, Warren, J., entered June 3, 1905, upon granting a nonsuit in an action to recover damages for the fraud of a vendor in the sale of lands.  Affirmed.

*J. T. Mulligan* and *H. N. Martin,* for appellants.

*Merritt & Merritt,* for respondents.

MOUNT, C. J.—This action was brought by appellants, to recover damages from respondents on account of alleged false and fraudulent representations in regard to the sale of certain real estate. These representations are alleged to have been made by respondents O'Connor and Lee, and relied upon by appellants. Upon issues of fact made by the pleadings, the cause came on for trial to the court and a jury. After the plaintiff F. M. Van Horn had given his testimony, the trial court took the case from the jury, upon motion of the respondents. This appeal is from the judgment of dismissal.

[1]Reported in 85 Pac. 260.

Mr. Van Horn's testimony was in substance, that on June 7, 1904, he went with Mr. O'Connor to look at a half section of land owned by Mr. O'Connor in Lincoln county. They looked over the land on that day, when Mr. O'Connor represented that there were two hundred and forty acres of the land in cultivation. After looking at the land on that day, they returned to the town of Downs, near by, where Mr. O'Connor introduced Mr. Van Horn to one F. C. Lee, and then told Mr. Lee that he and Mr. Van Horn had been out to look at the land, and said to Mr. Van Horn: "Mr. Lee can tell you as much about the Lyman place as I can. He has sowed the place and headed the place, and knows what there is of it." Mr. Lee thereupon told Mr. Van Horn, that there were two hundred and forty acres of the land under cultivation; that there were some thirty acres more which could be cultivated, and that there would be not over fifty or sixty acres of waste land. These statements corroborated what Mr. O'Connor had theretofore told Mr. Van Horn. No agreement upon the price of the land was reached that day.

On June 10, 1904, Mr. O'Connor and Mr. Van Horn again went to examine the land. There was a fence around the whole section, but no dividing fence. They drove along the north line to about the center of the section, and then followed the supposed half section line south to where Mr. O'Connor said the corner ought to be. They did not go as far as the south fence on that side of the section because Mr. O'Conner said he thought the fence was beyond the line, and was built through the rocks for convenience in fencing, and that the bad land which was between them and the fence was not upon the half section. They did not find the corner of the half section. Mr. O'Connor thereupon said it must have been moved or taken away. After looking around at the land, they returned to Downs. On the way back Mr. O'Connor again said that there were two hundred and forty, or two hundred and forty-one acres of land under cultivation,

and twenty-five or thirty acres more which could be broken up, and which would make two hundred and seventy acres of good farm land on the half section. After they returned to Downs, Mr. Van Horn asked Mr. Lee if he was to get anything out of the sale, and Mr. Lee told him, "Not from you. Mr. O'Connor pays me." In the evening of June 10, Mr. Van Horn traded to Mr. O'Connor Spokane city property for the half section of land, at an agreed price of $6,400.

After he had purchased the land, Mr. Van Horn discovered that the fence on the south side of the half section was located upon the south line. The court refused to receive evidence as to how many acres of the land were tillable. On cross-examination, Mr. Van Horn stated that he had never met Mr. O'Connor until about the 1st day of June, 1904; that he was desirous of trading Spokane property for farm lands, and went to see Mr. O'Connor for that purpose, and had no other dealings or relations with him; that he had never met Mr. Lee until the 7th of June, 1904, and had no other dealings with him. Upon the facts as stated above, the lower court was of the opinion, that there were no confidential relations existing between Mr. O'Connor or Mr. Lee and Mr. Van Horn; that the representations made were expressions of opinion about facts which were as open and obvious to the appellant as to the respondents, and that appellant had an opportunity to obtain the facts about which representations were made, and for that reason dismissed the action.

It is clear from appellant F. M. Van Horn's evidence that he obtained all the land which was shown him, and some which was stated did not go with the half section purchased. But the important and controlling question in the case is whether, after examining the land, appellant may complain because there is not as much tillable land as was represented by the respondents. This court has frequently held that, where representations are made as a matter of opinion, there is no liability for misrepresentations, where the parties are

dealing at arm's length and the means of knowledge are as open to one party as to the other. *Hulet v. Achey,* 39 Wash. 91, 80 Pac. 1105; *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559; *Daniel v. Glidden,* 38 Wash. 556, 80 Pac. 811, and cases there cited.

But, where the representations made are of material facts within the knowledge of the vendor, and entirely without the knowledge of the vendee, and where the circumstances are such as reasonably call for a reliance thereon, the rule is that the vendee may rely upon the representations of the vendor. *Daniel v. Glidden, supra; Lawson v. Vernon, supra; Baker v. Bicknell,* 14 Wash. 29, 44 Pac. 107; *Sears v. Stinson,* 3 Wash. 615, 29 Pac. 205; *Hanson v. Tompkins,* 2 Wash. 508, 27 Pac. 73. In the last named case this court held that, where the vendor represented that a tract of land contained thirty-six and one-half acres, when as a matter of fact it contained only twenty-six and one-half acres, the vendor was guilty of deceit, where he did not know but believed the representations were true. The same rule was followed in *Sears v. Stinson, supra.*

These cases are relied upon by the appellants, but it does not appear in either of them that the vendee to whom the land was sold had an opportunity to make an examination, or that he did so. On the other hand, it appears that the vendee relied wholly upon the representations of the vendor; and it further appears in *Hanson v. Tompkins* that it was the intention of the parties to convey forty acres of land, and that a less number of acres was actually conveyed. The case of *Baker v. Bicknell, supra,* seems to be squarely in point, and decisive of the case before us. According to the appellant's evidence, which must be taken as true on this appeal, both Mr. Lee and Mr. O'Connor represented that there were two hundred and forty acres of land in cultivation upon the half section. They stated at the same time that there were twenty-five or thirty acres more that could be put into cultivation, and not to exceed fifty or sixty acres of waste land out of the three hundred and twenty acres. These two latter

statements were clearly expressions of opinion and, being so, indicate that the exact number of acres in cultivation was also unknown to them, and that the statement that there were two hundred and forty acres in cultivation was more in the nature of an estimate than of a warranty. There appears to be no claim that the land under cultivation had ever been measured by the vendor, or that he or his agent, Mr. Lee, knew or claimed to know the exact number of acres. The appellant stated, in one part of his examination, that Mr. O'Connor said there were two hundred and forty or two hundred and forty-one acres, indicating again very clearly that Mr. O'Connor was merely estimating the number of acres. The land was open and plainly subject to inspection or measurement. The appellant viewed it twice. He was presumably competent to estimate the area before him as well as the respondents. The parties were strangers to each other, and dealing with each other at arm's length. Appellant does not claim that he received less land than he agreed to purchase, but only that a portion of it was not of the quality which he desired it should be. The trial court saw and heard the complaining witness testify, and concluded from his own evidence that the representations made to him were expressions of opinion. We think the court was justified in so doing.

The judgment is therefore affirmed.

DUNBAR, CROW, HADLEY, RUDKIN, ROOT, and FULLERTON, JJ., concur.