[No. 13249. Department One. July 7, 1916.]

JOHN MEYER et al., *Respondents*, v. REBECCA C. MAXEY et al., *Appellants*.[1]

EXCHANGE OF PROPERTY — RESCISSION — FRAUD — INSPECTION — LACHES — EVIDENCE — SUFFICIENCY. Rescission of a consummated exchange of lands should not be granted for false representations as to a water right, irrigation ditches, character of soil and value, where both parties had largely inflated the valuations for trading purposes and the vendee made a full inspection which disclosed the facts complained of.

SAME—RESCISSION—FRAUD—INSPECTION—ESTOPPEL. A vendee is estopped to rescind a contract for false representations as to the existence of an irrigation ditch, where the vendor was honestly mistaken, having paid for the ditch, and immediately had it dug with the knowledge and consent of the vendee, who then expressed no desire to rescind.

Appeal from a judgment of the superior court for King county, Back, J., entered September 16, 1915, upon findings

[1]Reported in 158 Pac. 995.

in favor of the plaintiffs, in an action for rescission, tried to the court. Reversed.

*Carkeek & McDonald,* for appellants.

*Nicholas Schmitt,* for respondents.

ELLIS, J.—Action to rescind an exchange of real estate and for damages. In the fall of 1913, all of the parties resided in Seattle, but were not acquainted. Plaintiffs owned two acres of land within the limits of that city which they desired to exchange for a farm. Defendant Rebecca C. Maxey owned, as her separate property, a large tract of land near Prairie City, in Grant county, Oregon, which she had listed for sale with one Stewart, a member of a firm of real estate brokers in Seattle. Plaintiffs learned of this through another real estate agent who took them to Stewart's office in the hope of making an exchange. Pursuant to an appointment then made, plaintiffs met Mrs. Maxey in Stewart's office in November or December, 1913, and it was finally agreed that if, after examination of the respective lands, both parties were satisfied, plaintiffs should select and take one hundred and sixty acres of defendant's land at a valuation of $16,000 in exchange for their two acres at a valuation of $10,000 and their promissory note for $6,000 to be secured by a mortgage upon the land taken by them. Plaintiffs' land was subject to a mortgage for $1,500, to offset which they assigned to defendant a note for a like amount secured by a mortgage on certain land in Lewis county, Washington.

Defendant soon after examined the two acres and was satisfied with it, but positively declined to make the trade unless Meyer would go to Oregon, examine the land, and investigate conditions for himself. John Meyer, Mrs. Maxey and the agent Stewart all so testified. Accordingly, in December, 1913, the exact date not appearing, Meyer and Stewart went to Prairie City, Oregon, arriving there about

two o'clock in the afternoon and drove out that evening to look at the land. Next day Meyer expressed a wish to examine the land alone and accordingly visited it alone, spending the entire day in his investigation. He testified that he also talked concerning the land that day for an hour or more with another man who had purchased from Mrs. Maxey a part of the same tract adjoining that which was selected by Meyer, and stayed at his house that night, returning to Prairie City the next day. Stewart testified that plaintiff then expressed himself as well satisfied with the land and stated he would take the south one hundred and sixty acres and that he was ready to return to Seattle. He also testified that he did not suggest or in any manner hasten Meyer's return to Seattle nor interpose any kind of obstacle or objection to his making the fullest examination and investigation he might desire.

Meyer and Stewart returned to Seattle, and neither defendant nor Stewart made any further overtures in the matter. Plaintiffs were not heard from until the expiration of about ten days, when they appeared at Stewart's office and announced themselves as ready to close the deal on the terms outlined. Stewart then drew up a contract between the parties embodying those terms, and Meyer took it to his then attorney, Henry W. Lung, of Seattle, for examination, together with defendant's permit from the Oregon authorities for the appropriation of water for the land. Lung expressed himself as not satisfied with the agreement, in that it did not mention the water right, and thereupon redrew the contract in accordance with plaintiffs' request. Defendant at the same time delivered to Lung the abstract of title to the Oregon land for examination. As a result of his examination of the title and water permit, deeds were exchanged and the deal was closed. The foregoing facts are not disputed.

In March, 1914, plaintiff and his family moved to the Oregon land, and now claims that he then found that the land was in many particulars different from what it had

been represented to him by Mrs. Maxey and that it could not be irrigated because no ditch had been dug across an adjoining tract belonging to one Mulrick and that no right of way for such a ditch had been acquired. He at once wrote to his attorney Lung in Seattle concerning the water, urging that the matter be straightened out. Lung took the matter up with Mrs. Maxey, who at once went to the land and, with plaintiffs' knowledge and tacit consent, at an expense of some $425, secured a right of way and had a ditch dug across the Mulrick land so as to convey water from the source of supply onto the land here in question. In order to do this, she testified that she secured from the proper authorities of the state of Oregon an extension of time for appropriating the water and that she did this at Meyer's request. Meyer denied having made this request, but it is undisputed that the permit was secured through his attorney, Henry W. Lung. After having secured this extension and constructed the necessary ditch, Mrs. Maxey returned to Seattle. Early in April, plaintiffs brought this action. The trial resulted in a decree awarding a rescission of the exchange, a cancellation of the deeds and of the $6,000 note, a return to the plaintiffs of the $1,500 note and mortgage on the Lewis county land, and a judgment in their favor for $630 damages. Defendants appeal.

The misrepresentations charged as inducing the exchange were: (1) that the land had a water right pertaining to it, whereas it had none; (2) that Mrs. Maxey represented that she had spent $2,200 in ditches to irrigate the land; (3) that the land was rich valley and bottom land; (4) that it was worth $100 per acre; (5) that it would produce sixty bushels of wheat to the acre. The testimony of respondents and their two sons tended to support all of these charges. As to the water right, Mrs. Maxey testified that she represented only that she had a water permit from the state of Oregon and delivered the permit to respondents and their attorney in evidence of that fact; that she made no representations

as to the ditches on this particular land, but supposed that the ditch conveying the water to the land had been dug, since she had hired a man to dig it, but on visiting the land in March, 1914, found that he had not done so; that she did not represent that the land was bottom land, since the fact that it was bench land was plainly apparent to any one; that she purchased the land for about $25 an acre in 1910 before there was any railroad in the vicinity and had sold part of the adjoining land for $100 an acre; that she did not represent that the land would produce sixty bushels of wheat to the acre, since she knew the land had never been cultivated, which fact was apparent to any one.

A careful consideration of the entire record convinces us that the evidence strongly preponderates in favor of appellants. It is manifest that any sort of an examination of the land must have disclosed the fact that neither the sum of $2,200, nor any other large sum, had been expended in ditches on this particular tract, and must have disclosed the fact that it was not bottom, but bench, land. As to its value, it is manifest from the evidence that both parties largely inflated the values of their respective lands for trading purposes and that each relied upon his own judgment as to the actual values. As to what the land would produce, the respondent himself testified that, when he visited the land in December, 1913, he inquired from the adjoining owner about the soil, about the climate, about the crops on similar lands in that vicinity, in short, that he asked him about every question he could think of. The record is long and we cannot further discuss the evidence in detail. There are, however, two controlling facts which are undisputed and which we find determinative of this case.

Touching the water right, it is true that appellant represented that a ditch had been dug carrying water to the land. In this she was confessedly mistaken, but it is also undisputed that, as soon as she discovered that fact, she went to the land, secured an extension of time for the ap-

propriation of the water and had the ditch dug, thus meeting
her duty in the premises.   All this was done with the knowl-
edge and tacit consent of the respondents, and we are satis-
fied from all of the evidence, though conflicting on the sub-
ject, that at that time the respondents expressed no desire
to rescind.   There can be no question that Mrs. Maxey re-
turned to Seattle with the impression that respondents were
entirely satisfied with what she had done.   Upon these facts
we are clear that respondents should be estopped to claim
the right to rescind because of the representation as to the
water right.   *Wetternach v. Jones-Thompson Inv. Co.*, 77
Wash. 144, 137 Pac. 442.

Appellant refused to make the trade unless and until the
respondent had examined the land and satisfied himself as
to its character and quality.   Respondent entered upon an
examination and expressed himself as fully satisfied with the
land.   He had every opportunity to make as full an exami-
nation as he desired, and though he now says the land was
then so wet that he could not make a thorough examination,
the fact remains that he clearly acted upon his own judg-
ment and asked for no further time to investigate.   Even
assuming that every representation charged by respondents
had been made by appellant, it is manifest that the case falls
within the rule announced by Pomeroy and reiterated in
many of our decisions to the effect that, where the party
charging misrepresentation institutes inquiry for himself,
has recourse to the proper means of obtaining information
and actually learns the real facts, or could have done so by
availing himself of the means of information at hand, he
cannot claim that he did not learn the truth and was misled
by the representations.   2 Pomeroy, Equity Jurisprudence
(2d ed.), § 893; *Wilson v. Mills*, 91 Wash. 71, 157 Pac.
467; *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186,
L. R. A. 1916B. 1069; *Conta v. Corgiat*, 74 Wash. 28, 132
Pac. 746; *Shores v. Hutchinson*, 69 Wash. 329, 125 Pac.
142; *Van Horn v. O'Connor*, 42 Wash. 513, 85 Pac. 260.

While we have gone as far as any court in relieving against inducing fraud and artifice, we have never gone so far as to relieve a purchaser of all responsibility for a failure to observe facts and conditions as much within his reach as that of the seller, especially where he has professedly undertaken an examination for himself with every opportunity to make it as complete as he pleased.

The judgment is reversed and the cause is remanded with direction to dismiss the action.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.