[No. 14101. Department Two. August 14, 1917.]

WILLIAM FORRESTER et al., *Respondents*, v. OMUND O. JASTAD
*et al., Appellants.*[1]

ACTIONS—JOINDER—LEGAL OR EQUITABLE. Under Rem. Code, § 153, authorizing an action for both legal and equitable relief, an action by a vendee for false representations in the sale of land is cognizable in equity where it seeks damages and relief from liability upon notes given for the purchase price, and to restrain the negotiation of the notes to an innocent holder.

VENDOR AND PURCHASER—FRAUD—INSPECTION — EVIDENCE — SUFFI-
CIENCY. Relief for false representations by a vendor in the sale of land is not warranted by the evidence, where it appears that misrepresentations as to a boundary were eliminated by the acceptance of a deed correcting it, that the vendee inspected the premises and was aware of the rocky and gravelly character of the soil which had been misrepresented, and any statement as to the amount of the cleared land could have been no more than an estimate, and the vendee had full opportunity to estimate it before buying.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered August 28, 1916, in favor of the plaintiffs, in an action for damages for fraud, tried to the court. Reversed.

*Forney & Ponder*, for appellants.
*C. A. Studebaker*, for respondents.

FULLERTON, J.—This is an action for damages for false representations in the sale of land, in which it is sought to offset the damages because of the false representations against certain promissory notes given as part of the purchase price of the land, and to permanently restrain the defendants from transferring such notes and the mortgage given to secure their payment. The cause was tried to the court. No findings of fact or conclusions of law were made, except such findings and conclusions as were incorporated in the decree. The court assessed the damages of plaintiffs in

[1]Reported in 167 Pac. 55.

the sum of $500, and directed the cancellation of the note for that sum, which was past due, and further made its restraining order against the transfer of that note permanent. The court also directed the delivery to plaintiffs of a deed tendered in court by defendants for a strip of land which had been included in the sale, but to which defendants had no title at the time of the execution of the original deed. This deed was withdrawn from the files and recorded by the plaintiffs. The defendants appeal, assigning various errors, only two of which we have found it necessary to notice.

The appellants first contend that the action was one for damages for the breach of a contract, and therefore the allowance of equitable relief by the court was erroneous. The complaint was based upon the fraud of appellants, but instead of seeking rescission on that ground, they sought to recover damages. It was alleged that appellants had no property other than respondents' notes and mortgage, and asked that any recovery allowed be set off against respondents' notes to appellants still due on the purchase price, and further, that appellants be enjoined from disposing of such notes *pendente lite*, and from foreclosing the mortgage securing the same.

Under Rem. Code, § 153, an action may be maintained for both legal and equitable relief. *Durga v. Lincoln Creek Lumber Co.*, 47 Wash. 477, 92 Pac. 343. The essence of the action is to relieve respondents from liability on notes procured from them by fraud, and to restrain the negotiation of such notes to an innocent holder, whereby the liability of respondents would be confirmed and the appellants enabled to place themselves in a position to defeat the enforcement of any judgment against them for damages. The action is cognizable in equity. *Conaway v. Co-Operative Homebuilders*, 65 Wash. 39, 117 Pac. 716.

The evidence shows that the respondent William Forrester was a ship carpenter working at Bremerton, and that he had decided, owing to his advancing years, to buy a small farm

on which he could make a home.   He noticed in a Seattle newspaper the following advertisement:

"Complete dairy and hog ranch.   80 acres of rich mellow soil.   Not a rock or gravel.   35 acres cleared, mostly in clover.   3 acres bearing orchard.   7-room house.   Large dairy farm.   6 cows, 4 head of young stock, 3 hogs, young team of draft horses worth $400.00; chickens, complete set of farm machinery, barn full of hay and other crops, and in a fine farming section.   Price $3,700.   One-half cash.   Southwest Washington Land Company, Second Ave. Downs Building."

The respondent repaired to the Seattle office of the realty company, where he was shown a sample of soil from the farm advertised, and was assured that the place was just as represented.   He was sent down to the Centralia office of the company the latter part of November, 1913, and was conducted by its local officers to the farm of the appellants Jastad.   The day was cold and rainy, and only a couple of hours were spent in an inspection of the place, principally occupied in looking at the cleared portions of the land and the buildings and stock.   The respondent did not attempt to go all over the place, which was largely uncleared sloping land with a few benches.   The parts he was shown were the only parts adapted to cultivation, but the stony and gravelly nature of the land was readily visible, although respondent testified he did not notice it.   The cleared portions, some half dozen in number, were scattered over the eighty acres, were irregular in shape, and it was difficult to estimate the exact acreage in them.   Respondent testified the appellant assured him there were thirty-five acres of that class, but the appellant denies stating that amount, either to respondent or to his own agents who advertised that quantity.   He claims that he did not tell respondent there were more than twenty-five acres cleared, but he admits speaking of one tract as containing sixteen to eighteen acres and another tract as containing seven acres of cleared land, and that he did speak of other cleared pieces, three small parcels which, according to respondent's testi-

mony of the figures given by him, aggregated ten acres, when
in fact there were less than four. In showing the land, a
fence on the north side was indicated as the line of the land
for sale, with the exception of a small triangular deflection in
the fence. This fence was, however, set over on a neighbor's
land and inclosed some six acres of the latter. On the east
side there were also four and one-half acres not belonging to
appellants, but inclosed within their fence. One-half acre of
this tract was also cleared land. The respondent expressed
himself satisfied after the inspection, and made a payment
down, for which he was given the following receipt:

"Nov. 29th, 1913.
"Received of Wm. Forrester three hundred & fifty ($350)
dollars as earnest money on my farm & personal property as
advertised.                                    I. Jastad."

The deal was closed on January 6, 1914, by the payment of
$1,650 additional, and the execution of three notes secured
by mortgage, two of the notes being for $500 each, and the
last for $700, due, respectively, in one, two, and three years.
The respondents went into possession and made no complaint
of their bargain until their neighbor on the north claimed
some of the land inside of the fence. Appellant was notified
of the difficulty and promised to straighten it out, his wife
being the daughter of the claimant of the land. The note
falling due January 6, 1915, was paid by respondent. As
the maturity of the second note began to draw near without
appellants having arranged the matter of the disputed
boundary, this action was instituted.

As we view the case, the misrepresentation as to boundary
on the north is eliminated by the acceptance of the deed cor-
recting it. Likewise, the rocky and gravelly character of
the soil is not an element of fraud, as the buyer made per-
sonal inspection of the premises, and its gravelly condition
was as apparent to a shipwright as it would be to any other
person. The statement in the advertisement that the farm
had "a rich, mellow soil, without rock or gravel," was, of

course, a pure fabrication, probably invented by the realty agents rather than the owner. The fact that the four and one-half acres inclosed on the east apparently belonged to the farm is not an element of damage, as the respondents procured title to more than the eighty acres contracted for and there was but one-half acre of that tract cleared, so that its appearance would not sufficiently enhance the value of the farm in the eyes of an intending purchaser as to deceive him to his prejudice.

The evidence respecting the actual quantity of cleared land is in conflict, varying from fourteen to twenty acres, while the quantity represented by the advertisement and, as testified by respondent, by the appellant Jastad also was thirty-five acres. Conceding that there were some fifteen acres of cleared land less than respondents supposed they were securing, any statement by appellant as to the amount does not appear to have been other than an estimate, and not made as the statement of a positive fact upon which respondents were entitled to rely. The respondent William Forrester went over the ground before buying and had full opportunity himself to estimate the quantity of cleared land, and is not in a position to say that he relied upon any representations. We think that the finding of the court as to the existence of actionable misrepresentation is not supported by the evidence. The case of *Van Horn v. O'Connor*, 42 Wash. 513, 85 Pac. 260, is in point. That was a case involving the sale of a half section of land, two hundred and forty acres of which were stated by the vendor to be under cultivation. We there said:

"According to the appellant's evidence, which must be taken as true on this appeal, both Mr. Lee and Mr. O'Connor represented that there were two hundred and forty acres of land in cultivation upon the half section. They stated at the same time that there were twenty-five or thirty acres more that could be put into cultivation, and not to exceed fifty or sixty acres of waste land out of the three hundred and twenty acres. These two latter statements were clearly expressions

of opinion and, being so, indicate that the exact number of acres in cultivation was also unknown to them, and that the statement that there were two hundred and forty acres in cultivation was more in the nature of an estimate than of a warranty. There appears to be no claim that the land under cultivation had ever been measured by the vendor, or that he or his agent, Mr. Lee, knew or claimed to know the exact number of acres. The appellant stated, in one part of his examination, that Mr. O'Connor said there were two hundred and forty or two hundred and forty-one acres, indicating again very clearly that Mr. O'Connor was merely estimating the number of acres. The land was open and plainly subject to inspection or measurement. The appellant viewed it twice. He was presumably competent to estimate the area before him as well as the respondents. The parties were strangers to each other, and dealing with each other at arm's length. Appellant does not claim that he received less land than he agreed to purchase, but only that a portion of it was not of the quality which he desired it should be. The trial court saw and heard the complaining witness testify, and concluded from his own evidence that the representations made to him were expressions of opinion. We think the court was justified in so doing."

The judgment of the trial court will be reversed, with instructions to allow the plaintiffs to retain the deed tendered and received, and to deny further relief. Neither party will recover costs in this court.

ELLIS, C. J., MOUNT, HOLCOMB, and PARKER, JJ., concur.