[No. 17336.   Department Two.   December 19, 1922.]

## J. W. D. MacKay et al., Respondents, v. Phillip Peterson et al., Appellants.[1]

VENDOR AND PURCHASER (22) — MISREPRESENTATIONS — RELIANCE UPON — MEANS OF KNOWLEDGE — INSPECTION — EVIDENCE — SUFFICIENCY. Misrepresenting about ten cultivated acres as sixteen acres, cannot be made the basis of a rescission of a trade for a forty-acre farm, where the purchaser was a farmer of experience and inspected the premises and had full opportunity to investigate it, and the cultivated portion was in a well defined body not greatly irregular and readily within a comprehensive view.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 22, 1921, upon findings in favor of the plaintiffs, in an action for damages for fraud, tried to the court.   Reversed.

*Wright, Kelleher, Allen & Hilen,* for appellants.
*Wingate & Benz,* for respondents.

TOLMAN, J.—Respondents, as plaintiffs, alleging that the transaction was induced by false representations upon which they relied, sought by this action to recover damages therefor in the amount of $2,500.   From a judgment against the defendants awarding such damages to the extent of $1,250 and interest, this appeal is prosecuted.

The facts, except as to whether or not such representations were made, are not greatly in dispute.   It appears that in November, 1919, respondents were the owners of three pieces of residence property in the city of Seattle, which they valued at $8,500, subject to mortgages aggregating $2,300; that they agreed to purchase appellants' farm near Maple Valley, together with certain livestock, farm implements, tools, house-

[1]Reported in 211 Pac. 716.

hold furniture, and other personal property, at a valuation of $10,250, and in payment therefor turned in their equities in the Seattle properties at $6,200, appellants agreeing to assume and pay the mortgages thereon, and gave back a mortgage on the farm for $4,050, the balance of the agreed purchase price. The transaction was closed and the deeds exchanged in the latter part of November, 1919. Shortly thereafter the respondent husband took up his residence on the farm, and the wife remained in Seattle to follow a gainful occupation. No complaint of any kind was made until after the appellants had paid the mortgages against the property taken by them in the trade, and after respondents had sought and obtained an extension of time within which to pay the first semi-annual interest falling due six months after the execution of the mortgage given by them on the farm.

There was evidence tending to show that appellants told the agent who brought the parties together that there were sixteen acres of the farm in cultivation, or cleared, though this is categorically denied. This information was conveyed to respondents before the parties ever met, and the same representations are claimed to have been repeated when respondents went to inspect the farm. It appears conclusively that the parties were entire strangers to each other, never having met until the day when the trade was consummated, at which time respondents, accompanied by the agent, went to the farm, met appellant Peterson, and examined the place without let or hindrance. The cleared and cultivated land was in a body, not greatly irregular in shape, defined by a county road on the east and for the most part on the south, fenced and cross-fenced. Substantially five acres, constituting what may be called the north half, was in meadow and divided from the

remainder by a cross-fence running nearly parallel with the north boundary fence. The south half containing slightly less acreage, was again divided, the easterly portion contained the farm buildings and orchard, and the westerly portion was used as a vegetable plot. The whole of the cleared area actually contained 9.86 acres.

The whole farm consisted of forty-one and a fraction acres, and outside of the cleared portion above described, was covered with timber, or was what is known as logged-off land. The cleared land was described by the witnesses generally as "rolling," or "gently rolling," and references were made to "depressions," "draws," "ridges," "elevated points," and the like. It seems clear that there were few, if any, points from which the whole of the cleared tract could be seen at one time, but equally clear that one by moving about a little could readily obtain a comprehensive view of the whole cleared area. There was nothing in the situation which would tend to prevent one so desiring from satisfying himself, either by estimating the extent of the area, or, if unwilling to trust his judgment of distances, by stepping them off, as respondent MacKay says he afterwards did, and thereby first learned that he had been deceived. MacKay was a man of experience, had been raised on a farm, and later had cleared and farmed a tract of land in British Columbia, so that, notwithstanding some irregularities, and even conceding the most that any witness testified to as to roughness, it seems incredible that he could have mistaken 9.86 acres for 16 acres. Having actually gone upon the land for the purpose of inspection, and having had every opportunity to satisfy himself as to the facts in any way he might choose, there being nothing said or done to deter him, may he now be heard to say that he

relied upon the alleged misrepresentations of the seller?

Of all the cases decided by this court, involving the same issues, which have been called to our attention, the case of *Van Horn v. O'Connor,* 42 Wash. 513, 85 Pac. 260, is most nearly in point because the facts are almost identical. In that case, after referring to the previous decisions of this court, thought to throw a guiding light upon the questions under discussion, it was said:

"The land was open and plainly subject to inspection or measurement. The appellant viewed it twice. He was presumably competent to estimate the area before him as well as the respondents. The parties were strangers to each other, and dealing with each other at arm's length. Appellant does not claim that he received less land than he agreed to purchase, but only that a portion of it was not of the quality which he desired it should be."

The facts in *Wooddy v. Benton Water Co.,* 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, clearly distinguish it from the case at bar. There the seller represented that the tract to be conveyed, which was a part of a much larger tract, and was not fenced off or otherwise clearly defined, contained sixty acres, while in fact it contained but 52.64 acres; that the entire tract to be conveyed could be watered by gravity flow from a certain irrigating canal, while in fact 28.24 acres, or more than half of what was actually conveyed, was above the level of the canal and could not be so irrigated. These facts could not be ascertained by ordinary inspection, but only by an accurate survey. The seller had caused such a survey to be made and knew the true situation, all of which was unknown to the buyer. The rule of that case applied to the facts there involved is a proper one, but it has no application to the facts which we are now considering.

So, also, in *George v. Kurdy,* 92 Wash. 277, 158 Pac. 965.

"The tract which was represented to contain one hundred acres was upon a knoll and hillside, and was of very irregular shape, and was covered with brush and small trees, ten or fifteen feet high. Of this, no reasonably accurate estimate of the amount of land which was susceptible of cultivation could be made without a scientific survey."

Hence it was held that, though the buyer visited the land and had an opportunity to investigate, he might still rely upon the representations of the seller, because the falsity of these representations was not readily ascertainable.

In the case of *Glasgow v. Brecht,* 117 Wash. 245, 200 Pac. 1089, there was involved a tract of 260 acres, of which the seller represented that 200 acres was in cultivation, whereas it appeared afterwards by survey that but 140 acres of the land was in cultivation. The question was whether the evidence was sufficient to take the case to the jury, and the facts, not very fully stated in the opinion, but going far beyond the facts here involved, were held sufficient to carry the question of false representations to the jury.

Upon the other hand, following the case of *Van Horn v. O'Connor, supra,* in the cases of *Conta v. Corgiat,* 74 Wash. 28, 132 Pac. 746; *Wilson v. Mills,* 91 Wash. 71, 157 Pac. 467; *Meyer v. Maxey,* 92 Wash. 73, 158 Pac. 995, and *Forrester v. Jastad,* 97 Wash. 633, 167 Pac. 55, the rule of the *Van Horn* case has been reaffirmed, and we are therefore constrained to hold that the evidence does not sustain nor justify the judgment.

The judgment is reversed and the cause dismissed.

Parker, C. J., Fullerton, and Main, JJ., concur.