[No. 21351. *En Banc.* June 20, 1929.]

E. Q. FORSYTH, *Respondent, v.* SUSAN C. DAVIS, *Individually and as Administratrix, Appellant.*[1]

*Crollard & O'Connor* and *LeRoy McCann,* for appellant.

*A. N. Corbin,* for respondent.

HOLCOMB, J.—Respondent sued for damages alleged to have been suffered by him because of misrepresentations made by Forest Davis, in his lifetime, concerning the condition of an apple orchard, water system, etc., conveyed by Forest Davis and wife to respondent in exchange for a parcel of real estate, a payment in cash, the assignment of a note and mortgage, the assumption by plaintiff of a mortgage upon the Davis orchard, and the remainder in four $5,000 installments due at stated times. Respondent had judgment for $2,500, from which defendants appeal. Plaintiff cross-appeals from the order of the court refusing to allow

[1] Reported in 278 Pac. 676.

him damages in a sum greater than $2,500. After the appeal was perfected, Forest Davis died, and appellant, Susan C. Davis, having been appointed administratrix of his estate, has been substituted in her capacity as administratrix, as party appellant in lieu of Forest Davis. In this opinion, the respondent and cross-appellant will be referred to as respondent, and Mrs. Davis as appellant.

Prior to the year 1926, respondent had owned and operated three different orchards in the vicinity of Wenatchee. Having disposed of these about February 1, 1926, he desired to purchase another orchard. Early in February, he called at a real estate office in Wenatchee and stated that he was in the market for a purchase. These realtors had then no legal listing for a sale or appointment of agency from the owners. One of these realtors, without communicating with Forest Davis, who owned a twenty-acre orchard upon which was situated a house and other improvements, took respondent over the south ten acres of the Davis property, the ground at the time being free from snow and the orchard in a dormant condition. Respondent looked over the property and expressed himself as well pleased with it. After further examinations and negotiations with Davis, a deal was closed whereby the Davis twenty acres was conveyed to respondent. Thereafter, respondent instituted this action, ratifying and confirming the purchase, but asking damages on account of alleged fraudulent representations made by Davis to him, whereby he was induced to purchase the Davis orchard. The trial court allowed recovery upon one item of damage only, basing the judgment upon a finding that some of the fruit trees were affected with a tree disease known as crown rot. The other items of damage alleged, upon which no recovery was allowed

by the court, will be discussed later in connection with respondent's cross-appeal.

Both parties presented proposed findings, the court finally preparing its own findings selected from those prepared by the parties. The trial court found that Davis, as an inducement to respondent to purchase the orchard, represented to respondent that the trees in the orchard were "in good or fine condition and in the peak of bearing;" that respondent relied upon these representations, and that Davis knew, when he made the statements referred to, that the trees were not in good or fine condition or in the peak of bearing, and that the representations so made, were untrue, false, fraudulent, incorrect, and were known by him to be such; that the trees, instead of being in fine or good condition and in the peak of bearing, were, as to those on approximately three acres, suffering from the tree disease known as crown rot, and that the trees had been in that condition for several years prior to February, 1926. The court also found that respondent had, personally, with the real estate agent, examined the orchard, discussed the varieties of trees, observed the setting thereof, noted the fact that the orchard had been pruned and fertilized, and considered its location in regard to the adjoining city and the general desirability of the place. That, later, Davis invited respondent to make a further inspection of the orchard, which respondent failed to do.

Appellant complains that the trial court erred in making the finding of fact as to the representations by Davis; in concluding that respondent was entitled to any damages; in failing to make findings of fact and conclusions of law as requested by appellant; in entering judgment in respondent's favor; and in denying appellant's motion for a new trial. These assignments

of error raise no question other than the sufficiency of the evidence to support the judgment entered.

In support of appellant's argument for reversal of the judgment, two propositions are advanced: first, that there were no misrepresentations made by Davis which support a charge of fraud; and, second, that, granting that the representations might be actionable under certain circumstances, the condition of the property concerning which the representations were made was so obvious that respondent, having investigated the property for himself, cannot maintain this action upon the representations of which he complains.

There was no confidential or fiduciary relation existing between the parties, and they dealt at arm's length. There was no disparity of intelligence, skill or ability. Respondent had previously owned and operated three orchards, and had resided in the Wenatchee valley for more than seven years. Respondent had ample opportunity for thorough examination of the property, and actually examined it several times before the transaction was finally closed.

That testimony must be "clear, cogent and convincing," in order to support a judgment as for fraudulent misrepresentations, is well settled. It is also true, as was stated by this court in *Wilson v. Mills*, 91 Wash. 71, 157 Pac. 467, a case based upon alleged fraudulent misrepresentations, that ". . . every case of this character must rest upon its own facts, subject to certain general principles." This being true, it is seldom that opinions in cases previously decided are of more than general assistance in determining whether or not the facts in a particular case do or do not support a judgment for damages based upon alleged fraudulent misrepresentations.

Respondent testified that he was not familiar with the tree disease known as crown rot, and the testi-

mony of the experts as to whether or not the presence of this disease, during the dormant season of growth, can be readily determined by an examination of the trees by one not an expert, is conflicting. But the experts do agree, and common sense dictates, that no special horticultural skill or experience is necessary to notice vacancies in the settings, and the presence there of trees of different sizes and ages.

Uncontradicted evidence on behalf of respondent showed that on the two-and-a-half, or three, acres in controversy in the south ten acres, there was practically no terminal growth; that, in 1924 and 1925, between twenty-five and thirty trees had been pulled out and reset by other trees (which of course was apparent); that, in 1924 and 1925, some of the trees showed a very small terminal growth; that, in February, 1926, any one with experience could certainly tell whether there had been terminal growth the preceding year; that the owner of the property adjoining the ten acres had an area in his own orchard which was in a similar condition, which he attributed to a kind of clayey soil which underlay both areas; that there were some dead leaders on some of the trees; that the fact that there were a number of vacancies showed that the injury had occurred some time before; that the trees having short terminal growth showed a lack of vigor, indicating sick trees, the very things a person looks for in a sick tree, especially at the crown; that one could tell from the color and lack of terminal growth that trees so appearing were in poor condition; that some of the trees were slightly affected; others very sick, some showed dead limbs or leaders and others showed just poor color and the usual sickly appearance. Respondent testified that there were forty-two trees in such bad condition that he had to pull them out at once.

Those were facts which were open and apparent,

which anyone inspecting a place for the purpose of purchasing was bound to notice. It was not necessary for anyone to know, or give the correct name to, any specific disease affecting the orchard. Anyone without technical knowledge of the tree diseases infecting them could not help but see that the trees on the two-and-a-half or three-acre area were in bad condition, and therefore probably diseased.

It was a condition, not a theory, that confronted respondent, and he bought with his eyes open thereto. His only excuse was that he was not acquainted with the particular disease known as crown rot, although it appears that it was more or less prevalent in that district. Respondent had last owned an orchard about five miles from the orchard in question for a little over three years, having sold it in December, 1925, very shortly before purchasing this orchard. He, himself, was an experienced orchardist and doubtless on equal terms with Davis.

What should be regarded as one of the most material representations shown by respondent to have been made by Davis, was that the orchard was a good orchard in the peak of production, producing from 10,000 to 12,000 boxes of apples each year on the twenty acres. This was such a material representation as, if false, would be actionable. But respondent cannot complain of lack of production as represented, for, in 1926, from the twenty-acre orchard, he picked and sold 10,399 boxes of apples, besides about 1,000 boxes of culls out of 16,000 loose boxes of apples. It is apparent, therefore, that no complaint could be made of lack of production as represented.

These facts manifestly bring this case within the rule laid down in *Wilson v. Mills, supra,* and the cases and texts there cited. The circumstances in that case are shown somewhat by the following quotation:

"Finally, it must be remembered that Wilson was a man thirty-seven years old. Though not a farmer, he was a successful business man. The parties were dealing at arm's length. They had never met before this transaction. There was no relation of confidence between them nor any disparity in intelligence. So far as the record shows, Wilson knew as much about farm lands as Mills knew about city property. Wilson went all the way from Seattle to Grays Harbor county to examine this land. He cannot be heard to say that he looked at nothing but what Mills pointed out, saw nothing but what Mills wanted him to see, knew nothing but what Mills told him, acted on nothing but what he learned from Mills. It must be remembered this was a trade. The evidence makes it too plain for doubt that both parties puffed their wares and put in their respective properties at inflated trading prices."

In the instant case, respondent knew as much about orchard land as Davis. He examined the land, without interference, repeatedly, and without knowledge on the part of Davis. Davis pointed out nothing to him, and he cannot be heard to say that he did not see what was open, obvious and apparent. It must also be remembered that this was, in part, an exchange of properties.

In another case, *MacKay v. Peterson,* 122 Wash. 550, 211 Pac. 716, we reviewed a number of our preceding cases distinguishing those wherein the vendor had superior knowledge respecting material conditions which should have been communicated to the vendee and were not, and others where misrepresentations were actually made as to conditions the purchaser could not see; and held that misrepresentation concerning ten cultivated acres as sixteen acres could not be made the basis of rescission of a trade for a forty-acre farm where the purchaser was a farmer of experience, inspected the premises, had full opportunity to investigate it and the cultivated portion was in a well

defined body, not greatly irregular and readily within a comprehensive view. We therefore held that a judgment for damages in favor of the purchaser could not be sustained, and cited several of our cases in support thereof.

In a very recent case, *Sims v. Robison,* 142 Wash. 555, 253 Pac. 788, the *MacKay* case, *supra,* was quoted and followed, and also the case of *Farrar v. Churchill,* 135 U. S. 609, to the effect that:

"If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations."

It is conclusively established in this case that respondent investigated for himself as fully as he desired; nothing was done to prevent his investigations from being as full as he chose; he saw the actual conditions on the land; they were open and apparent to anyone; and certainly he cannot now be permitted to say that he relied on the vendor's representations.

We therefore conclude that the judgment in favor of respondent, upon the item of damage upon which it was given, is unwarranted.

Respecting the cross appeal of respondent based upon his claim that he should have received a greater allowance on account of the diseased condition of some of the trees in the orchard which he purchased, what we have said disposes of that matter.

Respondent also claimed damages on account of alleged false representation concerning the water system in the north ten acres on the home ranch, the height of the "lift" used in connection with the irrigation system and some other matters. A careful examination of the record satisfies us that the trial court correctly denied respondent any relief in connection with those items.

The judgment upon the cross appeal is therefore affirmed.

The judgment upon the principal appeal is reversed and the action dismissed.

TOLMAN, MAIN, PARKER, and FRENCH, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the evidence does not preponderate against the findings of the trial court, who, in deciding the cause, had the advantage of seeing and hearing the witnesses.

I accordingly dissent from the conclusion reached by the majority.

FULLERTON and MILLARD, JJ., dissent.