105 P.3d 395 (2004)
Dale M. HOEL, a single man; Michelle D. Jones, a single woman, both as their separate property, Respondents,
v.
Betty Jo ROSE and John Doe Rose, husband and wife, and the marital community composed thereof; Nancy Hudson and John Doe Hudson # 1, husband and wife, and the marital community composed thereof; Donna Hudson and John Doe Hudson # 2, husband and wife, and the marital community composed thereof; and Troy Rose and Jane Doe Rose, husband and wife, and the marital community composed thereof, Appellants.
No. 52860-2-I.
Court of Appeals of Washington, Division 1.
November 1, 2004.
Publication Ordered January 4, 2005.
*396 Kenneth Wendell Masters, Bainbridge Island, WA, Craig David Sjostrom, Mount Vernon, WA, for Appellants.
David Lawrence Day, Fairhaven Legal Associates, PS, Burlington, WA, for Respondents.
COX, C.J.
In an action for negligent representation arising from a real estate sale, the purchaser must prove that he or she justifiably relied on alleged material misrepresentations by the seller about the property.[1] Here, the dispositive issue is whether Dale Hoel and Michelle Jones (Hoel) justifiably relied on representations of Betty Jo Rose that the lot they ultimately purchased from her contained 6.43 acres and had dimensions of 330 feet by 820 feet. On this record, the court's determination that Hoel justifiably relied on these representations and thus were entitled to damages and other relief cannot be sustained. Accordingly, we reverse.
The facts are generally undisputed. In 1977, Rose and her husband purchased the lot that is the subject of this litigation and the lot directly to the east of it. Both lots were undeveloped at the time of the purchases. Rose sold the adjacent lot to her parents, the Hudsons, in 1977. Between 1977 and 1979, Rose and the Hudsons built houses and other buildings on their respective properties. Without conducting a survey, the parties set the boundary between their lots based on purported boundary markers on the properties. They erected a fence along a portion of the eastern boundary of the Rose lot in 1977 or 1978. From that point on, the common boundary between the lots remained unchanged.
In 2000, Rose marketed her property, first through a realtor and later by herself. She placed advertisements on the Internet and posted flyers around Darrington, Washington. Hoel learned of the property from one of the flyers, met with Rose, and viewed the house and property.
Rose told Hoel that the lot size set forth in her flyers was 6.43 acres based on information she had obtained from the county tax statement. Rose also indicated that the lot dimensions (330 feet by 820 feet) were derived from a realtor in connection with her previous listings of the property. She also stated that she had not had the property surveyed during the period of her ownership. When Hoel toured the property with Rose, she pointed out the landmarks constituting the boundaries of the property. Among them, she pointed out the fence built in the late 1970's that marked the common boundary of the property between her lot and the Hudsons' lot to the east. Hoel also examined *397 the property without Rose, but did not inspect all the property, as Rose encouraged.
Hoel did not commission a survey, measure the lot dimensions, or undertake any investigation or verification of the information provided concerning the boundaries or lot size prior to closing. But Hoel obtained a pre-closing appraisal that valued the property at $167,000. The appraisal contained a diagram of the property that was admitted into evidence as Exhibit 14. The boundaries shown in this diagram differed significantly from what Rose had represented.
The sale closed on October 1, 2003. Rose conveyed the property by statutory warranty deed for $165,000.
Several months after the closing, Hoel conducted an investigation of the location of the boundaries. Hoel commissioned a survey that disclosed that the legal description of the purchased property appeared to vary from the common boundary between the former Rose property and the Hudsons' property to the east. Specifically, the Hudsons' house, driveway, and a significant portion of their property was inside the easterly portion of the legal description of Hoel's lot. This survey showed the lot size to be 5.04 acres. The appraisal valued the property with the boundaries Rose had pointed out at $210,000.
After discovering this information, Hoel placed fencing along the surveyed boundary and removed trees and underbrush in that area. Hoel also removed portions of the fence that had stood between the Hudson's property and his lot at the time of sale. These actions led to confrontations between Hoel and members of the Rose family.
Hoel brought this action, which included a claim against Rose for negligent misrepresentation. After a bench trial, the trial court concluded that Rose negligently and unintentionally misrepresented the size of the parcel conveyed to Hoel. The court also determined that Hoel justifiably and reasonably relied on statements by Rose concerning the size and boundary locations of the property. In addition, the court determined that Hudson had either adversely possessed the easterly portion of the property described in the legal description that Rose had used to convey to Hoel or that Rose and Hudson had established the common boundary between the properties by mutual recognition or acquiescence prior to the sale to Hoel. The trial court entered a judgment against Rose in the amount of $33,301, plus attorney fees of $10,000 and costs.
Rose appeals.

NEGLIGENT MISREPRESENTATION
Rose does not challenge either the court's determination that Hudson adversely possessed the easterly portion of the property sold to Hoel or that she and Hudson had established a common boundary between their respective properties. Likewise, she does not challenge the court's determination that she supplied erroneous information to Hoel in connection with the sale of the property.
The threshold issue that she does argue is that there is no substantial evidence to support the trial court's finding that Hoel justifiably relied on her representations concerning the size and dimensions of the lot. We agree and so hold.
We analyze a negligent misrepresentation claim by asking whether: (1) the defendant made a negligent misrepresentation; (2) a party relied on the misrepresentation causing the party harm; and (3) the party was justified in relying on the misrepresentation.[2] To prevail on a claim of negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that he or she justifiably relied on the information that the defendant negligently supplied.[3] Reliance is justifiable if it is reasonable under the circumstances.[4] The question of whether a party justifiably relied is a *398 question of fact.[5] We review a finding of fact that is incorrectly designated as a conclusion of law for substantial evidence.[6]
The findings of fact in this case are largely undisputed and to that extent are verities on appeal.[7]

Reasonable Reliance
Rose first cites MacKay v. Peterson,[8] for the proposition that Hoel's reliance was not reasonable under the circumstances and the judgment of the trial court should be reversed. Alternatively, Rose argues that if this court does not reverse, then the court should assign a percentage of fault to Hoel for unjustifiable reliance. We agree with the first argument and need not reach the alternative one.
In MacKay, the buyer inspected the land, and the seller stated that 16 acres of land had been cleared on the property, but in reality only 9.86 acres had been cleared.[9] The buyer was an experienced farmer who had ample opportunity to inspect the land, and could have determined the cleared area did not measure 16 acres. The entire parcel could not be viewed at one time, but the cleared area was not obscured.[10] The buyer, through his familiarity with land, by estimating the area, or by roughly measuring it by "stepping" off the distance, could have determined the cleared area was much smaller than represented.[11] The court determined that the buyers reliance on the sellers representation was not reasonable given the buyers experience, and his opportunity to inspect the land.[12]
Here, there is no substantial dispute over the facts. Rather, the question is whether the essentially undisputed facts support the determination that Hoel reasonably relied on the representations of Rose as to the size and dimensions of the property.
Hoel had a full opportunity to inspect the Rose property. While choosing not to inspect all of it, in spite of Roses suggestion to do so, there was nothing to inhibit Hoel from investigating the accuracy of the representations. And there is no suggestion from the evidence that anything material about the property was hidden from discovery by Hoel.
We note that Hoel obtained a pre-closing appraisal (Exhibit 14) that contained information at variance with the representations of Rose. First, the map that was part of the appraisal showed the property's dimensions as 725 feet by 375 feet. This varied from Roses representation that the boundaries were 820 feet by 330 feet. Second, the same map showed the Hudsons' driveway (as well as the house and other improvements associated with that driveway) to be within the eastern boundary of the property Hoel was to purchase from Rose. Third, assuming the property dimensions shown on the map were correct, they did not show a lot size of 6.43 acres  as Rose represented.[13] Rather, they *399 indicated a lot size of something much less than that acreage. Despite this information, Hoel did nothing to reconcile the differences between what he was able to discover on his own by examining the property or by attempting to reconcile the differences between the appraisal and the representations of Rose.
The property boundary pointed out by Rose also clearly conflicted with the map in Hoel's appraisal. Hoel could have further investigated the description offered by Rose. But Hoel took no steps to investigate or resolve the conflict between the actual boundaries of the property pointed out by Rose and the 6.43 acres estimate contained in both the county record, and Hoel's own pre-closing appraisal.
Hoel cites Hoffman v. Connall,[14] for the proposition that a buyer has a cause of action against any seller of realty who innocently misrepresents the quantity, boundaries, or location to a purchaser. Hoffman states, "[t]he owner is held liable because he is presumed to know the character and attributes of the land conveyed, and the buyers are entitled to rely upon the owners reasonable representations of the premises."[15]
The court in Hoffman, however, did not explain how the buyers reliance was justifiable. Here, we do. Hoffman is not helpful here.
Neither is Algee v. Hillman[16] to which Hoffman cites for the proposition that the seller is presumed to know the character of the land and is subject to a cause of action for misrepresentation is helpful here. Nothing in it explains why in this case Hoel has met the requirement of justifiable reliance on representations about the land that the seller makes.
Moreover, the cases upon which the court in Hoffman relies are factually distinct from the present case. The clearly defined boundaries pointed out by Rose in this case present a different scenario compared to other cases where the court determined a negligent representation occurred. For example, in Alexander Myers Co. v. Hopke,[17] the property in question had irregularly shaped borders and there were no landmarks delineating boundaries. There, the court concluded that the buyer could not have determined the actual size of the property and could only rely on the sellers representations.
A similar unclear boundary problem existed in Dixon v. MacGillivray.[18] In both situations the property boundaries were not clearly ascertainable by an average buyer, but rather a survey was required to determine the actual boundaries. In those cases, the court held that reliance by the purchaser upon misrepresentations of acreage by the vendor is justifiable when the boundaries were not reasonably ascertainable and the purchaser could not have determined them without a survey.
Dixon went on to distinguish itself from situations where inspections occurred and boundaries are marked. Citing Conta v. Corgiat,[19] the Dixon court stated:
We held, in that case, that the purchaser twice visited and inspected the lot, its boundaries were plainly marked and there was no concealment or pointing out of false lines, hence rescission of the sale for fraud on the ground that the vendor misrepresented *400 the area was denied because of the application of the rule of caveat emptor. That is, where the boundaries are reasonably ascertainable, the rule of caveat emptor applies, but where, as in the case at bar, there was no defined physical boundary on the northwesterly side of the lots and there was no way respondents could have determined the true boundary in the absence of a survey, respondents had a right to rely upon the representation of appellants.[[20]]
Here, Hoel inspected the property, boundaries were clearly marked, there was no concealment or pointing out of false lines, and no survey was required to determine the true boundary. Moreover, Hoel had specific information in his appraisal that conflicted with the very representations on which the cause of action is based. Under the law and facts in Conta, Dixon and Alexander Myers, Hoel's reliance was not justifiable.
Based on these essentially undisputed facts and the relevant case authority, we must conclude that there is no substantial evidence to support the decision that Hoel justifiably relied on Roses representations regarding acreage and dimensions. Reversal is appropriate.
Because we reverse, we need not reach either apportionment of fault or the question of merger that Rose argues on appeal.

ATTORNEY FEES
Hoel argues that the trial court abused its discretion when it awarded fees less than the full amount claimed for reasonable attorney fees and costs at trial. We disagree.
A party seeking cross review must file a notice of appeal.[21] Hoel did not do so. Thus, we need not address Hoel's argument.
Moreover, because Hoel should not have prevailed below he was not entitled to be designated the prevailing party under the terms of the purchase and sale agreement. Thus, the award of attorney fees and costs to Hoel below must be reversed.
We reverse the judgment.
WE CONCUR: BAKER and SCHINDLER, JJ.
NOTES
[1] See Lawyers Title Ins. Corp. v. Baik, 147 Wash.2d 536, 545, 55 P.3d 619 (2002).
[2] Restatement (Second) of Torts 552 (1977); Lawyers Title Ins. Corp., 147 Wash.2d at 545, 55 P.3d 619.
[3] Lawyers Title Ins. Corp., 147 Wash.2d at 545, 55 P.3d 619.
[4] See Lawyers Title Ins. Corp., 147 Wash.2d at 551, 55 P.3d 619.
[5] ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 828, 959 P.2d 651 (1998) (quoting Barnes v. Cornerstone Investments, Inc., 54 Wash.App. 474, 478, 773 P.2d 884 (1989)).
[6] Willener v. Sweeting, 107 Wash.2d 388, 393-94, 730 P.2d 45 (1986).
[7] See Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992) (citing Nearing v. Golden State Foods Corp., 114 Wash.2d 817, 818, 792 P.2d 500 (1990)).
[8] 122 Wash. 550, 211 P. 716 (1922).
[9] MacKay, 122 Wash. at 552, 211 P. 716.
[10] MacKay, 122 Wash. at 552, 211 P. 716.
[11] MacKay, 122 Wash. at 552, 211 P. 716.
[12] MacKay, 122 Wash. at 552-53, 211 P. 716. See also Fleischman v. Hockett, 49 Wash.2d 328, 301 P.2d 166 (1956) (Where purchasers of a cattle ranch and farm had many years experience in farming, there was no confidential or fiduciary relation existing between vendors and purchasers. They dealt with each other at arm's length. Vendors did not represent that they had made a survey of the ranch and farm. Purchasers made a careful and unhurried examination of the ranch and farm before making the purchase, and the plowable acreage was only 64.1 acres instead of 158 acres as allegedly represented by vendors. Purchasers were not justified in relying on alleged fraudulent representations of vendors and were not entitled to recover damages from vendors because of alleged fraud.).
[13] Assuming the largest dimensions shown on the map (375 feet by 725 feet), the area of the lot was 271,875 square feet or 30,208 square yards. There are 4,840 square yards in an acre. Thus, the acreage, including the Hudson driveway and improvements, was about 6.24 acres. Exclusion of the land containing the Hudson driveway and improvements would, of course, have yielded even less than 6.24 acres and much less than the represented area of 6.43 acres on which Hoel claims to have justifiably relied on when purchasing from Rose.
[14] 43 Wash.App. 532, 538-39, 718 P.2d 814 (1986) (reversed on other grounds, 108 Wash.2d 69, 736 P.2d 242 (1987)) (citing Algee v. Hillman Inv. Co., 12 Wash.2d 672, 674-75, 123 P.2d 332 (1942). See also Alexander Myers Co. v. Hopke, 88 Wash.2d 449, 455, 565 P.2d 80 (1977); Darnell v. Noel, 34 Wash.2d 428, 431-32, 208 P.2d 1194 (1949); Dixon v. MacGillivray, 29 Wash.2d 30, 35, 185 P.2d 109 (1947); Lyall v. DeYoung, 42 Wash.App. 252, 258-59, 711 P.2d 356 (1985), review denied, 105 Wash.2d 1009 (1986)).
[15] Hoffman, 43 Wash.App. at 538, 718 P.2d 814 (citing Thompson v. Huston, 17 Wash.2d 457, 461, 135 P.2d 834 (1943)).
[16] Algee, 12 Wash.2d at 674-75, 123 P.2d 332.
[17] 88 Wash.2d 449, 455, 565 P.2d 80 (1977).
[18] 29 Wash.2d 30, 35, 185 P.2d 109 (1947).
[19] 74 Wash. 28, 132 P. 746 (1913).
[20] Dixon, 29 Wash.2d at 35-36, 185 P.2d 109.
[21] RAP 5.1(d).