[No. 10688.   Department Two.   June 10, 1913.]

### John Conta et al., Appellants, v. John Corgiat et al., Respondents.[1]

Appeal—Review—Findings.  A memorandum decision intended as findings which meets all the requirements will be treated as findings of fact.

Vendor and Purchaser—Remedies of Purchaser—Rescission—Fraud.  A sale of a lot 50x105 feet will not be rescinded for falsely representing that the lot was 120 feet long, where the purchaser twice visited and inspected the lot, its boundaries were plainly marked on the ground, and there was no concealment or pointing out of false lines and no subterfuge and no fiduciary relations between the parties; since the principle of caveat emptor applies.

Same—Rescission—Alternative Damages.  Where a rescission of a sale of a lot for fraud of the vendor in misrepresenting the area is properly denied because of the application of the rule of caveat emptor, there can be no abatement of the purchase price as an alternative remedy by way of damages for a deficiency in the quantity of the land.

Appeals from judgments of the superior court for King county, Ronald, J., entered February 14, 1912, in actions to rescind a purchase of land and to foreclose a mortgage, after a trial on the merits to the court.   Affirmed.

*Vanderveer & Cummings*, for appellants.

*Vince H. Faben*, for respondents.

Ellis, J.—Two actions in equity, growing out of the same transaction between the same parties, and depending upon the same state of facts, are presented in this appeal.   In the first, the appellants Conta and wife, as plaintiffs, sued for rescission of a purchase of real estate from the respondents Corgiat and wife, on the ground of fraud and misrepresentation as to the length of the lot.   In the second, the respondent John Corgiat sued the appellants Conta and wife, seeking to foreclose a mortgage upon the real estate in question given by

[1]Reported in 132 Pac. 746.

the appellants to secure the payment of a part of the purchase price. Both actions were pending in the lower court at the same time, and, though there was no consolidation of the two suits, a stipulation was entered into between the parties in the foreclosure suit, by their respective attorneys, to the effect that the only defense claimed was that the sale in connection with which the mortgage was given was induced by false representations entitling the appellants to a rescission, and that the foreclosure action should abide the result of the action to rescind.

The suit for rescission was first tried, and the trial judge made and filed a memorandum decision which he indicated should be treated as findings of facts and conclusions of law, unless other and more formal findings and conclusions were proposed by the parties. This was apparently not done; at any rate, the memorandum decision made by the trial court stands in the record as the only findings of fact made in the rescission suit. There is considerable controversy as to whether this memorandum should be regarded as findings of fact, but a careful examination of it leads us to the view that it meets all the requirements of findings and that it must have been so intended by the court. No statement of facts has been brought to us, so that the sole question presented is whether these findings justify the conclusions reached and sustain the decree dismissing the action for rescission.

The court found, in substance, that the appellant, an Italian of ordinary intelligence, with a fair understanding of the English language, had spent many years in Alaska, and had acquired something over six thousand dollars; that he returned to the city of Seattle, where he married, and desired there to purchase a home and a business; that he was well acquainted with the respondent Corgiat, who was a man of standing and influence with the Italian population of Seattle; that the appellant had confidence in Corgiat and informed him of his plans; and on one occasion had asked his

advice as to the value of certain property; that, in 1909, the exact date is not given, Corgiat advised appellant that he could purchase a half interest in a certain saloon from one Oberto, and that he, Corgiat, would sell him a lot with the improvements thereon for a home. Corgiat offered the lot for $9,250, telling appellant that he himself had paid $9,500 for it, and appellant was led to believe from the conversation with Corgiat that the lot contained 50x120 feet. The next day appellant went with Oberto to look at the property, which is in what is known as the Dearborn Street regrade. Appellant, appreciating that the surface of the lot would thus be left above adjoining streets, necessitating a regrade of the lot, and being unable to figure the quantity of earth to be removed, had Oberto make some calculations upon which to base an estimate. These calculations were made upon the assumption that the lot was 120 feet in length. On the following day, the appellant offered $8,750 for the property, which Corgiat then refused. The next day, being Sunday, appellant, with his brother, a man of means and of ordinary intelligence, visited the lot and examined it. The court states in his findings that the evidence does not show how long they were there or how careful an examination was made, but finds that there was nothing to prevent them from making the most extended or detailed examination that the appellant might require. The lines between the lot and the adjacent properties were clearly marked by an old fence, on one side, and a rough stone bulkhead, at the rear. The house stood about four feet from the bulkhead. On Monday morning, the parties again met, and Corgiat stated that he was leaving that night for California, and that if appellant wished to close the deal he would have to do so at once. Appellant then renewed his offer of $8,750, which Corgiat accepted. Appellant wished to consult a lawyer, but Corgiat told him that this would be a useless expense, that he could rely upon him to take care of unpaid taxes. It was agreed that $5,750 of the purchase price should be secured by a note and mort-

gage for that amount. Corgiat had the papers prepared, and about noon took them to appellant's house and presented the note and mortgage to the appellant and his wife for signature. Appellant, before signing, called attention to the fact that the papers did not give the dimensions of the lot, whereupon Corgiat stated that the lot was 50x120 feet. The court found that the lot fronted 50 feet on South Tenth street, and 105 feet on Lane street; and that the lot would have been worth materially more had it extended 120 feet in length on Lane street. But the court stated that he made no finding that the lot with its true dimensions of 50x105 feet was worth less than the appellant had paid for it. The appellant moved into the house upon the property, and lived there until November, 1910. In February, 1910, he notified Corgiat that he had discovered the shortage, and demanded a return of the purchase price and offered to re-deed the property to the respondents, which offer was refused.

From these findings, the court concluded that the appellant had ample time and opportunity to learn the true dimensions of the lot; that he had sufficient intelligence, if the dimensions of the lot were the real, material consideration moving him to make the purchase, to have ascertained such dimensions before signing the papers; that he had no excuse for not knowing the true dimensions of the lot, except his reliance upon the word of Corgiat; and that slight care or prudence on his part would have discovered the truth. Hence the court refused to decree a rescission, but concluded that, as a matter of equity, the appellant having received but seven-eighths of the property that Corgiat represented was being conveyed, he should have credit for one-eighth of the purchase price, or $1,093.75, with interest from the date of the mortgage, and that the mortgage should be foreclosed for the remainder only of the sum due thereon.

This memorandum decision was filed by the court on May 26, 1911. No formal decree was then entered thereon, both parties apparently being content to await the entry of decree

in the foreclosure suit for a final disposition of the suit for rescission. On July 7, 1911, the stipulation above mentioned having been called to his attention, the trial judge, deeming himself bound by the stipulation modified his conclusions in the rescission case so as to hold that, having found that the suit for rescission must be dismissed, he had no power, under the stipulation, to rebate any part of the mortgage. Accordingly, on February 10, 1912, a decree covering both actions was entered, dismissing the rescission suit with prejudice and decreeing a foreclosure of the mortgage for the full amount of the debt secured. The Contas, as plaintiffs in the rescission suit and as defendants in the foreclosure suit, have appealed from both branches of this decree.

It is first contended that, under the court's findings, a rescission should have been granted. This court has gone far in granting rescission or relief in damages in cases of purchase of real estate induced by fraud or misrepresentation, but never so far as we would have to go to decree a rescission in this case. While the parties were friends, it would be straining a wholesome principle to the breaking point to hold that there was any fiduciary or trust relation existing between them. The lines of the lot were marked upon the ground by physical objects, the streets, the sidewalks, a fence, and a bulkhead. There was no pointing out of false lines, no artifice to conceal the true dimensions, no designation of a wrong property, no subterfuge to prevent a view of the premises or an actual measurement of the lot. The appellant Conta visited the lot at least twice, once with Oberto and once with his brother. On the first occasion, the making of an estimate for regrading the lot would naturally suggest to a man of the most ordinary intelligence a measurement, or at least a pacing off of its lines, either of which would have demonstrated the deficiency complained of. On the second occasion, the court found that the appellant and his brother had every opportunity to make the

most extended and detailed examination that might be desired. As pertinently pointed out by the trial judge, the conduct of the appellant clearly negatives the idea that he regarded the exact dimensions of the lot as an inducing consideration to the purchase. That the fact misrepresented must be a moving factor inducing the purchase, is almost universally held essential to rescission or the alternative relief in damages. We have been cited to no decision, and have seen none, which would sustain either remedy under facts such as here found by the court. The cases cited from this court, as supporting the appellant's contention, fall, according to their controlling facts, into three classes. (1) Those in which no mention is made of the vendee's opportunity to discover the facts, or where actual artifice was resorted to, to prevent an inspection, as by pointing out the wrong land or false lines. *Phinney v. Hubbard*, 2 Wash. Ter. 369, 8 Pac. 533; *Hanson v. Thompkins*, 2 Wash. 508, 27 Pac. 73; *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880. (2) Those in which the subject-matter of the transaction was so obscured by irregularity of shape or contour, or marked with such ill-defined boundaries as to be incapable of ready, definite measurement; as in *Friday v. Parkhurst*, 13 Wash. 439, 43 Pac. 362, where an originally platted alley, shown upon the plat exhibited to the purchaser, had been vacated and no such improvement of the addition had been made as would indicate the absence of the alley. Similar considerations were controlling in *Best v. Offield*, 59 Wash. 466, 110 Pac. 17, 30 L. R. A. (N. S.) 55, and *Arrowsmith v. Nelson*, 73 Wash. 658, 132 Pac. 743. (3) Those cases in which the misrepresentation or inducing artifice was not readily discoverable because the subject-matter was located at a distance and it was known that the defrauded party would make no personal investigation. *Stack v. Nolte*, 29 Wash. 188, 69 Pac. 753; *Nelson v. Title Trust Co.*, 52 Wash. 258, 100 Pac. 730;

*Wooddy v. Benton Water Co.,* 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102; *Godfrey v. Olson,* 68 Wash. 59, 122 Pac. 1014. The cases of *Stone v. Moody,* 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799, and *Lilienthal v. Herren,* 42 Wash. 209, 84 Pac. 829, both rest upon their peculiar facts, which are easily distinguishable from the present case. The facts found bring this case within the rule *caveat emptor,* upon which the following cases rest: *Baker v. Bicknell,* 14 Wash. 29, 44 Pac. 107; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Zilke v. Wood-ley,* 36 Wash. 84, 78 Pac. 299; *Van Horn v. O'Connor,* 42 Wash. 513, 85 Pac. 260.

While this court has gone as far as any court in relaxing that rule in the interest of fair dealing, it has not abrogated the rule so as to relieve the purchaser of all responsibility for a failure to observe conditions as much within his reach as that of the seller.

In the case before us, the court denied a rescission, not upon the ground of laches, changed condition of the parties, or of the subject-matter or because of other countervailing equities, but upon what we conceive to be a proper application of the rule *caveat emptor.* Damages by abatement of a part of the purchase price being only an alternative remedy, optional with the vendee, which in the absence of laches or other equitable defense must rest upon the same evidentiary facts as the relief by rescission, it follows as a corollary that where rescission is refused on the principle mentioned, there can be no relief in damages. The trial court recognizing this fact in his conclusions held that no relief could be granted in the rescission suit, but also held, as we think inconsistently, that an abatement of one-eighth of the purchase price could be made in the foreclosure suit but for the stipulation. It is manifest that the abatement if justified at all must be because of the facts found in the rescission suit. If those facts were insufficient basis for relief in that

action, then *a fortiori* are they insufficient in the collateral action for foreclosure. We find it unnecessary to enter upon an invited construction of the stipulation, since it is manifest that, under no theory of the case, was an abatement in the foreclosure suit warranted.

Both decisions are affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.