[No. 15053. Department Two. February 13, 1919.]

WILLIAM HURLEY et al., Appellants, v.
CORDELIA LINDSAY et al.,
Respondents.[1]

FRAUD (8, 22)—PURCHASER OF LAND—DEFICIENCY IN ACREAGE—EVIDENCE—SUFFICIENCY. Findings that purchasers were not misled to their prejudice by false representations that a tract of land contained twenty acres, are sustained, where the tract was in compact form, its boundaries all in view and pointed out, and the purchasers twice inspected the boundaries and expressed doubt as to the area, but finally accepted deed referring to the land as twenty acres more or less, in view of a dispute in the evidence as to the representations made and the rule that the burden was upon them to show the fraud by clear and convincing evidence.

Appeal from a judgment of the superior court for Clarke county, Mackintosh, J., entered April 3, 1918, upon findings in favor of the defendants, in an action for damages for fraud, tried to the court. Affirmed.

*McMaster, Hall & Drowley,* for appellants.
*Miller & Wilkinson,* for respondents.

PARKER, J.—This is an action to recover damages. It is grounded upon alleged false statements made by and on behalf of defendants Cordelia Lindsay and her husband as to the number of acres in their farm, in-

[1]Reported in 178 Pac. 626.

ducing plaintiffs Hurley and wife to purchase it. Trial
in the superior court sitting without a jury, resulted
in findings and judgment denying to plaintiffs any re-
covery, from which they have appealed to this court.
The alleged false statement relied upon by the Hur-
leys as inducing them to purchase the farm was that
it contained twenty acres, when, in fact, it contained
but fifteen and three-quarter acres.

At the time of the sale in question, Mrs. Lindsay
was the separate owner of the land, her husband hav-
ing no legal interest in the title thereto. They lived
upon and cultivated it as a farm. It lies in a com-
pact body, its width being about one-third less than
its extreme length. Its north, west, and south bound-
aries are straight lines, joining at right-angles at the
northwest and southwest corners, while its easterly
boundary is a county road running in a general north-
easterly and southwesterly direction. It is compara-
tively level, and from near the house and barn one
can see all over it, save as to a very small part in a
depression where there is a spring. In March, 1917,
a real estate agent, who had been authorized by the
Lindsays to find a purchaser for the farm, brought the
Hurleys there and introduced them to Mr. Lindsay,
Mrs. Lindsay not then being there. They were shown
over the land by Mr. Lindsay, who, it is admitted, cor-
rectly pointed out to them the boundaries of the land.
They quite thoroughly looked over the farm, and be-
came well informed as to the location of its bound-
aries upon the ground. At that time one, and pos-
sibly both of the Hurleys, remarked that the tract
looked small for twenty acres. They were farmers
of many years' experience. They then went away,
expressing themselves as not sufficiently satisfied as
yet to purchase the place. About a week later they

returned, looked over the place to about the same extent as on the previous visit, and again expressed their doubts as to its containing twenty acres. They then agreed to purchase the place for $3,500. A deed to the land was soon thereafter executed and caused to be delivered to the Hurleys by Mrs. Lindsay, her husband joining therein, when the $3,500 was paid therefor, and the Hurleys entered into possession of the land. The deed contained an expressed consideration of ten dollars. There is some evidence indicating that the purchase price of $3,500 was not only for the land, but for some additional personal property, though the record is not clear upon this question. The land was described in the deed, corresponding strictly with the boundaries pointed out upon the ground by Mr. Lindsay to the Hurleys, as follows:

"Beginning at the quarter corner between sections fifteen (15) and twenty-two (22) in township three (3) north of range two (2) east of the Willamette Meridian, and running thence south ten and seventy-five hundredths (10.75) chains; thence east eight and thirty hundredths (8.30) chains to the center of the county road; thence in a northeasterly direction along the center of the county road to the north line of said section twenty-two (22); thence west along the north line of said section twenty-two (22) to the point of beginning, containing twenty acres of land, more or less."

Common repute seems to have indicated at that time that the farm contained twenty acres; but upon a survey of it thereafter, caused to be made by the Lindsays, it was found to contain but fifteen and three-quarter acres.

Before the sale, the place had been listed by the Lindsays with the agent for sale, referring to it in the agency agreement as twenty acres. There is some

testimony indicating that the agent stated to the Hurleys that the place contained twenty acres, but plainly so stated his understanding only as he had acquired it from the listing of the place with him for sale by the Lindsays, he so informing the Hurleys. We think it is plain that any such statement made by the agent was not relied upon by the Hurleys, since they thereafter talked directly with Mr. Lindsay upon this subject during both of their visits to the place before purchasing it. The evidence is in conflict as to what Mr. Lindsay said to them during those visits about the number of acres in the farm. The Hurleys testified that, when they visited the place, they expressed doubts as to its containing twenty acres, and that Mr. Lindsay then assured them that it did contain that number of acres, and that they would not have purchased it but for such assurance. Mr. Lindsay testified positively that, when they expressed doubt as to the place containing twenty acres, he said in reply thereto: "It always looked small to me, but I never had it surveyed and the deed called for twenty acres more or less"; and that he never stated to them otherwise touching the question of the number of acres in the place. This is in substance all of the evidence we have touching the question of statements made by either of the Lindsays, or in their behalf, to the Hurleys as to the number of acres in the farm. Mr. Lindsay first met the Hurleys when they visited the place with a view of purchasing it; and Mrs. Lindsay did not meet them until after the sale was consummated and the deed delivered to them.

Having in mind that, up to the time of entering into negotiations between the Lindsays and the Hurleys looking to a sale of the place, they were entire strangers to each other, and were dealing at arm's

length; that the Hurleys, before purchasing the land, twice visited and thoroughly inspected it and became well acquainted with the location of its boundary lines upon the ground; that the land lies comparatively level, in a fairly compact body, and is capable of being viewed all over from near the house and barn; that the description in the deed accepted by the Hurleys is by metes and bounds, conforming strictly to those pointed out to the Hurleys by Mr. Lindsay upon the ground, and concludes with the words "twenty acres of land more or less;" and that deceit and false representations and reliance thereon, such as are here invoked by the Hurleys, must be established by clear and convincing evidence to entitle them to recover, with the burden of proof resting upon them, we feel constrained to agree with the conclusion reached by the trial court, that the Hurleys were not misled to their prejudice in reliance upon any statement made by or in behalf of the Lindsays as to the number of acres in the farm. Our decision in *Conta v. Corgiat,* 74 Wash. 28, 132 Pac. 746, supports this conclusion.

The judgment is affirmed.

MAIN, HOLCOMB, MOUNT, and FULLERTON, JJ., concur.