[No. 22044. Department One. December 17, 1929.]

J. A. NARUP *et al., Respondents,* v. JOHN BENSON *et al.,*
*Appellants.*[1]

*Weaver & Weaver,* for appellants.
*Danson, Lowe & Danson,* for respondents.

BEALS, J.—The parties to this action, February 18, 1928, entered into a written contract for the exchange of real and personal property, which contract was later carried out by the delivery of the conveyances therein provided for. In a few months, plaintiffs instituted this action for the recovery of damages from defendants, basing their claim upon certain alleged representations by defendants as to the number of acres contained in the farm conveyed to them by defendants and particularly as to the amount of bottom land therein. The action was tried to the court, sitting without a jury, and from a judgment in favor of plain-

[1]Reported in 283 Pac. 179.

tiffs, awarding them damages in the sum of $2,500, defendants appeal.

By the preliminary contract above referred to, respondents agreed to convey to appellants a furnished apartment house in Spokane in consideration of the conveyance to them by appellants of a farm in Spokane county made up of several irregular and complicated descriptions of land, another tract consisting of two lots and a half in the town of Saint John, a $4,000 "farm contract," a $1,100 "store contract," and a $1,200 note. Respondents were also to receive certain seed and stock on the farm property and a considerable cash payment. Respondents agreed to assume a $1,400 drainage assessment on the ranch, and appellants were to assume a mortgage on the apartment house in the sum of $6,900.

Although the contract signed by the parties contained the following, "Price of first property $...... Price of second property $......," it nowhere contained any estimate of the total values of the properties to be exchanged. In form, the contract was an offer by respondents to appellants, formally accepted by the latter.

The exchange of properties having been consummated, respondents, in the course of a few weeks, caused the farm to be surveyed, the survey showing, as found by the court, that the farm contained 108.67 acres, of which 73.68 acres were bottom land. Respondents' surveyor testified that the bottom land amounted to 75.16 acres.

County roads form the northern and western boundaries of the ranch, a railroad bounds it on the east, and a wire fence on the south. In shape the ranch is very irregular, somewhat resembling a letter L with a wide stem on an angle and a short stub, the base being towards the north. The stub is separated from

the main tract by a county road and consists of two platted lots, upon which the house is situated. An irregular parcel, about seventeen acres in extent, clearly defined by a fence, had been taken out of the longer portion of the tract and was under separate ownership. Part of the ranch is hillside and part rough land, both of inconsiderable value, the remainder being rich bottom land, which constitutes the greater portion of the value of the ranch.

The parties to this action were strangers and dealing with each other at arm's length, they having been introduced by a real estate broker only four days before the preliminary contract was signed.

During the course of the presentation of respondents' case, the court allowed them to amend a paragraph of their complaint by striking therefrom the words "warrant" and "warranties" and making the paragraph read, "That the execution of said contract by these parties was induced by the fact that the defendants stated," continuing by alleging the representations which respondents claim were made by appellants as to the amount of acreage in the ranch and the number of acres thereof which were bottom land.

For convenience, respondent J. A. Narup will from now on be referred to as though he were the sole respondent, and appellant John Benson as though he were the sole appellant.

Respondent and his stepson, Howard Stegner, have had considerable experience as farmers, and visited the ranch prior to the signing of the contract. Appellant is a merchant with little or no experience in farming.

Respondent, testifying on his own behalf, stated that the trade with appellant was first suggested by Mr. McGillivray, a real estate agent, and that he first met appellant about the middle of February. On that

occasion, appellant showed respondent over a portion of the property, much of the meadow being covered with snow and water. Respondent testified that appellant pointed out the boundaries of the land and stated that there were 124 acres in the tract below the house, and in the entire tract a trifle over 140 acres. A few days later, respondent, with his wife, Howard Stegner, his stepson, and Mr. McGillivray, again visited the farm. Appellant and Mr. Stegner walked up the hillside, while respondent remained behind to examine the buildings, later joining appellant. According to respondent's testimony, Mr. Stegner asked concerning the boundaries of the property, which were then indicated by appellant, who stated that he had 100 acres in cultivation, of which 35 acres were seeded in alsike, 50 in wheat and 5 acres unploughed (a total of 90 acres). Respondent and Mr. Stegner both testified that the latter then asked how far it was between the north and south lines and stated that it appeared to him to be about "two forties," asking whether the distance was one-half or three-quarters of a mile; that appellant answered that it was three-quarters of a mile and added, "When you get down on the bottom, it looks much larger than from where you are." Some holes were dug to investigate the soil, but the party did not go over the entire tract on account of the snow, ice and water. Respondent stated that he relied absolutely on the representations made by appellant concerning the quantity of the land, testifying, on cross-examination, that appellant cheerfully showed the property and the nature of the soil and seemed willing to show all of the land.

Mr. Stegner testified specifically that, while going over the land with respondent and appellant, he "sized up the acreage according to the width and length of it and said 'It don't look like over two forties

in there;' " that in reply appellant counted up the different parcels of ground and stated how the acreage figured out, and that appellant stated that he had 105 acres under cultivation between the county road on the west and the railroad on the east. Mr. Stegner also stated, on cross-examination, that appellant apparently would have taken respondent and the witness to any part of the land they desired to examine.

Appellant denied making any representations as to his own knowledge concerning the acreage, but admitted that he stated that, according to information given him by the person from whom he procured the land, the total area should amount to about 139 acres.

In the first place, appellant assigns error upon the allowance by the court of the trial amendment above referred to. The amendment was properly allowed in view of the liberal rules of practice governing such questions.

The trial court found that appellant represented to respondent that the farm consisted of one hundred thirty-nine and a fraction acres, one hundred acres of which were fertile bottom land; that these representations were made to induce respondent to make the exchange of properties which the parties had in contemplation and were relied on by respondent in consummating the trade. The findings of the trial court as to the statements made by appellant having been made upon conflicting testimony and the evidence not preponderating against the same, we accept them and will consider whether or not respondent under all the circumstances of the case was justified in relying upon the statements made by appellant.

It is evident that the farm was open to respondent to make such examination thereof, both as to quantity and quality, as he saw fit. While there was snow on the ground and ice and water over the meadow, the

roads bounding the farm were open, and it would have been a simple matter to have walked along the entire north, east and west lines.

It is not contended that appellant claimed to have had the land surveyed or that his statements as to the amount of acreage therein contained were based upon any accurately determined measurement, and it is important to note that Mr. Stegner, who was examining the property on behalf of respondent, particularly stated that the tract did not appear to him to comprise "over two forties," in which estimate the witness was surprisingly accurate. There was no pointing out of false lines, no attempt to conceal the actual boundaries of the land, nor was there any showing of any land as part of the farm which did not actually belong thereto. Appellant demonstrated an entire willingness to assist respondent and his stepson in making exactly such an examination of the farm as they desired to make. The boundaries of the farm were all plainly visible, easy to follow and were correctly indicated by appellant. It is true that the boundaries were extremely irregular and the acreage consequently difficult to estimate accurately, but this fact was evident to respondent and called for care on his part, if the amount of bottom land was to him a determinative factor in making or not making the trade. We agree entirely with the trial court in its oral opinion to the effect that appellant made the statements concerning the amount of acreage in the farm in entire good faith and believing them to be true. This, of course, does not change the rule as to the effect of such statements, if in fact incorrect, provided that, under all the circumstances of the case, respondent was justified in relying thereon.

In the early case of *Van Horn v. O'Connor*, 42 Wash. 513, 85 Pac. 260, an action to recover damages

on account of alleged false representations concerning real estate, this court said:

"It is clear from appellant F. M. Van Horn's evidence that he obtained all the land which was shown him, and some which was stated did not go with the half section purchased. But the important and controlling question in the case is whether, after examining the land, appellant may complain because there is not as much tillable land as was represented by the respondents. . . . The land was open and plainly subject to inspection or measurement. The appellant viewed it twice. He was presumably competent to estimate the area before him as well as the respondents. The parties were strangers to each other, and dealing with each other at arm's length."

In the case of *Rackham v. Koch,* 125 Wash. 451, 216 Pac. 835, this court, while allowing a recovery for misrepresentations, placed considerable stress upon the fact that the purchaser was inexperienced in farming and in estimating acreage.

In the case at bar, it must be held that respondent and his stepson were experienced farmers and, of course, accustomed, at least to a considerable extent, to estimating acreage. They were also fully aware of the very much greater value of the meadow land over the hillside, and well knew the importance of the quantity of the former. They made a most careful examination of the soil and of the stock and personal property which they were to receive with the farm, and we are forced to the conclusion that, as to the size of the farm and the amount of meadow therein, they relied upon appellant's statements concerning the same at their peril. They were not being hurried into a too-quick consummation of the deal. Apparently plenty of time was available within which to make any survey or measurement they desired. In Mr. Stegner's judgment, expressed before the closing of the

deal and while on the land, appellant's statements concerning the acreage were incorrect, and, having failed to verify the same, we think it must be held that respondent proceeded at his own risk.

This conclusion finds support in the following opinions of this court: *Conta v. Corgiat,* 74 Wash. 28, 132 Pac. 746; *Wilson v. Mills,* 91 Wash. 71, 157 Pac. 467; *McKay v. Peterson,* 122 Wash. 550, 211 Pac. 716; *Sims v. Robison,* 142 Wash. 555, 253 Pac. 788.

Respondent cites several opinions of this court in which relief was allowed on account of false representations concerning land, but, in our opinion, this case is controlled by the cases cited.

The judgment of the trial court is reversed and the cause remanded with instructions to dismiss the action.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.