[No. 23795. Department Two. July 11, 1932.]

ANNA LOU, *Appellant*, v. BETHANY LUTHERAN CHURCH
OF SEATTLE, *Respondent*.[1]

*Samuel C. Converse, O. H. Carpenter*, and *Anton L. Anderson*, for appellant.

*Bayley & Croson*, for respondent.

HOLCOMB, J.—The fourth amended complaint in this case, after alleging a former marriage of appellant, the purchase of the premises involved herein and conveyance by her former husband to her prior to his death, among other things, alleges:

That, in July or August, 1920, she and her husband entered into negotiations for the purchase of the lot and buildings thereon described as the east 30 feet of

[1]Reported in 13 P. (2d) 20.

lot seven, block 110, D. T. Denny's Fifth Addition to North Seattle; that, during the negotiations, she went to the lot and inspected it and the buildings thereon accompanied by I. Tollefson, the then president of respondent and agent for it.

That, while they were on the lot, some man, whose name is unknown to appellant, drove a wooden stake into the ground at a point near the southeasterly corner of the lot, which stake was located well beyond all parts of the dwelling house situated on the lot; that Tollefson told appellant that the stake marked a point where the easterly boundary line of the lot commenced, which was adjacent and contiguous to a way belonging to the city of Seattle and unused at the time; that, at the time Tollefson pointed out and described the easterly boundary line, the way contiguous thereto was not a used way, street or thoroughfare and the land adjacent to the way was an open and unoccupied tract.

That appellant relied upon the representations of Tollefson concerning the location and direction of the easterly boundary line, and believed them to be true and correct; but that Tollefson at the time knew, or should have known, that his representations were false, and made them so that appellant and her co-grantee would believe that the dwelling house was situated wholly on and within the lot.

That, believing and relying on the representations of Tollefson concerning the location and direction of the easterly boundary line as described by him, that it ran well beyond the easterly eave of the dwelling house, she and her co-grantee were induced to buy the lots and buildings thereon, paying the sum of $2,500 therefor; that, on about August 30, 1920, the lot with the dwelling thereon was conveyed to appellant and her co-grantee by a statutory warranty deed executed and delivered by respondent; that, about three months

thereafter, she and her co-grantee moved into the dwelling house, where they lived until the death of her husband some four years later; that, since then, she has rented the dwelling most of the time and occupied it herself but little.

That, some time in July or August, 1930, the city of Seattle, or its agents, commenced to grade and improve the way contiguous thereto, and on about August 1, 1930, appellant was orally notified by the city street superintendent that her dwelling house overlapped the way; that, soon thereafter, appellant had a survey made which disclosed that the east side of the dwelling house diagonally overlapped the way, the northeast corner of the dwelling house overlapping about two inches and all the easterly eave overhanging it a distance varying from approximately twelve to eighteen inches.

That appellant, until on or about August 1, 1930, had fully relied on and believed the representations of Tollefson concerning the location and direction of the easterly boundary line, and had never suspected that they were false and untrue; that their falsity was ascertained only by having an accurate survey made; that she had always believed that the dwelling was situated wholly on and within the lot as represented by Tollefson, and that she had never suspected that the dwelling house overlapped the way until on or about August 1, 1930, when she received such notice from the city.

That, upon learning by the survey made that the dwelling house overlapped the way, appellant had the dwelling house moved back behind the true line and entirely within the lot. Items of expense and damage were then alleged aggregating $1,500, for which appellant prayed judgment.

The action was commenced in the court below in No-

vember, 1930. Respondent demurred to the fourth amended complaint, upon the grounds that it does not state facts sufficient to constitute a cause of action, and that the action has not been commenced within the time limited by law. The demurrer was sustained upon both grounds, appellant refused to plead further, judgment of dismissal was thereupon entered, from which this appeal is prosecuted.

Respondent asserts that it is apparent that fraud is not directly charged in the complaint, but that appellant relies upon misinformation, and does not contend that any facts are knowingly misrepresented.

It is manifest that appellant alleges and relies upon the representation made by Tollefson, the then president and agent of respondent, that the corner of the lot where the line would be, adjoining the way belonging to the city, was located so that the dwelling house in the lot would be wholly within that line of the lot.

It has become the settled law of this state that, when a vendor undertakes to point out lands or boundaries to a purchaser, he must do so correctly. He has no right to make a mistake except under the penalty of having the contract rescinded or responding in damages. The fraud of the vendor in such a case consists in representing as true, with knowledge that it is being relied upon as true, that which he did not know to be true. *West v. Carter,* 54 Wash. 236, 103 Pac. 21; *Bradford v. Adams,* 73 Wash. 17, 131 Pac. 449; *Grant v. Huschke,* 74 Wash. 257, 133 Pac. 447; *Lyle v. Cunningham,* 79 Wash. 420, 140 Pac. 330; *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584; *McDaniel v. Crabtree,* 143 Wash. 168, 254 Pac. 1091.

The instant case is stronger than that stated in *Starwich v. Ernst, supra,* in that there, there was no direct statement that the building was wholly within the lot lines as is alleged in this case; nor was the fact

apparent to an ordinary observer, as is alleged in this case. As stated in that case, possibly the fact that the building was not wholly within the lot lines could not have been discovered without a survey of the boundary of the street. In that case also it was shown, as is alleged here, that the building was one of the moving considerations which led up to the purchase of the property, and gave rise to a major part of the purchase price paid therefor.

Under these cases, the rule of *caveat emptor* cannot apply here.

We agree also with appellant that many cases cited by respondent are not applicable here because they involve alleged deficiencies in acreage or quantity of land, or in the quality of a substantial quantity. Thus, in *Conta v. Corgiat,* 74 Wash. 28, 132 Pac. 746, we held that the sale of a lot 50 x 105 would not be rescinded for falsely representing that the lot was 120 feet long, where the purchaser twice visited and inspected the lot, its boundaries being plainly marked on the ground and there was no concealment or pointing out of false lines, and no subterfuge, and no fiduciary relations between the parties; that the principle of *caveat emptor* applied. But that case is easily distinguishable from this, in that the boundaries were plainly marked on the ground and there was no pointing out of false lines, or concealment thereof, as is alleged in this case.

Other cases such as *Hegberg v. Tripp,* 99 Wash. 298, 169 Pac. 822; *MacKay v. Peterson,* 122 Wash. 550, 211 Pac. 716; and *Narup v. Benson,* 154 Wash. 646, 283 Pac. 179, together with cases cited and relied on in them, involved shortages in area where the deeds correctly described the boundaries and the acreage was capable of ready measurement, no artifice or fraud having been practiced to prevent complete examination. Such cases, manifestly, do not apply here.

The amended complaint before us clearly complies with the necessity of showing why the vendee came to be so long ignorant of her rights, and did not act sooner, under the rule laid down in *Noyes v. Parsons,* 104 Wash. 594, 177 Pac. 651:

"In order to excuse a want of knowledge of the fraud, a pleading must set forth what were the impediments to an earlier prosecution of the claim, how the pleader came to be so long ignorant of his rights, the means, if any, used by the opposing party fraudulently to keep him in ignorance, or how and when he first obtained knowledge of the matter alleged in the pleading."

Compare *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499; *Teeter v. Brown,* 130 Wash. 506, 228 Pac. 291; and *Sanders v. Sheets,* 142 Wash. 155, 252 Pac. 531.

In the case at bar, appellant alleged the false representation as to the line, the fact that the way belonging to the city was unused, that the tract adjoining the way on the other side was vacant and unoccupied, and that, until the city began to improve the way and notified her that her dwelling overlapped it, she had steadfastly relied upon the representation of respondent that the dwelling house was wholly upon the lot purchased, which was certainly a legal justification of her remaining in ignorance so long, none of which would have been shown by any official plat of the lot and the way, nor was the fact apparent to an ordinary observer. As was said in the *Starwich* case, *supra,* the fact could not possibly have been discovered without a survey of the boundary of the way.

Although the complaint, as asserted by respondent, does not use the word "fraud," that is unnecessary where the allegations sufficiently allege at least constructive fraud. *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654.

Under the decisions of this court applicable here, the fourth amended complaint stated a cause of action against respondent, and it was brought within three years after the earliest possible discovery of the constructive fraud by appellant.

The judgment is reversed and remanded, with instructions to reinstate the action and proceed in accordance herewith.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.