[No. 212-40760-1.    Division One.    April 13, 1970.]
Panel 1

FLORENCE B. WEINSTEIN, *Respondent,* v. E. E. SPRECHER *et al.,*
*Appellants.*

*Paul W. Robben,* for appellants.

*Bogle, Gates, Dobrin, Wakefield & Long* and *Don Paul Badgley,* for respondent.

SWANSON, J.—Max and Florence Weinstein[1] wanted to invest in real estate. E. E. Sprecher, M.D., a Seattle orthopedic surgeon, and wife, who were sometime real estate

---

[1]The sole respondent is Florence B. Weinstein. She, in her individual capacity, is the contract purchaser and brought the lawsuit. However, all negotiations were conducted by her husband, Max Weinstein. References to Weinstein in the opinion are to Max Weinstein, the husband and agent of respondent.

investors, had a parcel for sale. Dr. Sprecher gave an exclusive broker's listing to Erwin C. Goodwin. The written agreement described the tract as containing "30 acres more or less." Goodwin promptly found a potential buyer, the respondent Weinstein. Max Weinstein examined the listing agreement, and the broker indicated that the land contained "30 acres more or less." Weinstein and the broker viewed the land together from a road, but because of inclement weather, dense undergrowth, and the hillside slope, they neither walked upon the land nor attempted to locate its boundaries. The Sprecher property was part of a thickly wooded hillside without visible boundaries. The respondent agreed to the $39,000 total price, and thereafter buyer and seller signed an earnest money receipt agreement and a real estate contract, both of which described the land by metes and bounds but were silent as to acreage.

In May of 1966, more than 4 years after the purchase, respondent discovered that the tract contained only 24.6 acres, rather than approximately 30 acres. Respondent sued the Sprechers to recover a proportionate refund of the purchase price, and the trial court granted respondent return of a 5.4/30ths of the purchase price, together with a return of that portion of the interest attributable to the underage, totalling $9,722.85. Sprechers appeal.

Appellants Sprechers' six assignments of error raise three principal issues. First, appellants say the agent's language in the exclusive listing, "containing 30 acres more or less," was not a material representation of fact. They contend that this was a sale in bulk or in gross, the sale of land meeting the legal description in the agreements and conveyance without regard to its specific quantity. "Thirty acres more or less," appellants say, was only an approximation upon which the buyer had no right to rely. Appellants contend the caveat emptor doctrine is controlling as expressed in a line of cases beginning with *Conta v. Corgiat*, 74 Wash. 28, 132 P. 746 (1913), and continuing with *Wilson v. Mills*, 91 Wash. 71, 157 P. 467 (1916); *Hegberg v. Tripp*, 99 Wash. 298, 169 P. 822 (1918); *Walquist v. Johnson*, 103

Wash. 30, 173 P. 735 (1918); *Hurley v. Lindsay,* 105 Wash. 559, 178 P. 626 (1919); *Narup v. Benson,* 154 Wash. 646, 283 P. 179 (1929). .

■ In *Conta v. Corgiat, supra,* the purchaser visited the property, the boundaries were plainly marked, and there was no misrepresentation as to the location of the property lines. Here, the boundaries were neither defined nor ascertainable without a survey. In such circumstances, there is no obligation on the buyer to have a survey. See *George v. Kurdy,* 92 Wash. 277, 158 P. 965 (1916).

The caveat emptor doctrine, as applied in *Conta,* was discussed in *Dixon v. MacGillivray,* 29 Wn.2d 30, 35, 185 P.2d 109 (1947), and its proper application clarified by Justice Millard speaking for the court as follows:

> That is, where the boundaries are reasonably ascertainable, the rule of *caveat emptor* applies; but where, as in the case at bar, there was no defined physical boundary on the northwesterly side of the lots, and there was no way respondents could have determined the true boundary in the absence of a survey, respondents had a right to rely upon the representation of appellants.

Respondent had the right to rely upon appellants' representation, and the caveat emptor doctrine is not applicable here.

Further, appellants' contention that this was a sale in bulk or in gross has no merit, for there is ample support in the record for the conclusion that the sale was of a specified quantity of land and not a sale in bulk. Appellants have cited no cases to show that a sale in bulk or in gross occurs except when there are visible boundaries and the acreage sold is capable of being ascertained by the purchaser.

■ Secondly, appellants assign error to finding 2 which states in part as follows:

> Prior to the purchase of said tract by plaintiff from defendant, defendant represented to plaintiff that said tract contained 30 acres more or less.

Appellant Sprecher states that he never talked directly with the buyer nor authorized the realtor Goodwin to bind him to the sale of 30 acres. Appellants contend *Samson v.*

*Beale,* 27 Wash. 557, 68 P. 180 (1902), limits the authority of the real estate agent hired for the purpose of obtaining a purchaser and does not extend to make a realtor's representation as to amount of acreage binding upon the seller. *Samson,* relied upon by appellants, is inapposite. It concerns a misrepresentation regarding the quality or condition of a building. The distinction between such a representation and one indicating acreage or area is pointed out in *Yarnall v. Knickerbocker Co.,* 120 Wash. 205, 209, 206 P. 936 (1922):

> But the case of *Samson v. Beale, supra,* is not authority for the principle that a real estate broker, employed for the sole purpose of procuring a purchaser for real property, may not make representations as to the area and boundary lines of the property, binding upon his principal, when the area and boundary lines are not apparent from an inspection of the property. In that case the agent made representations as to the manner in which a building upon the premises was constructed, which proved to be a mistake, and these, it was held, were not binding upon the principal. This is a far different matter than merely pointing out the premises, and could well be said to be beyond the agent's authority without special authorization. . . . An agent or broker employed to procure a purchaser for real property could hardly make a beginning in his negotiations unless he was empowered either to exhibit the property or make representations concerning it of some sort. Where the property is at hand it is usual and customary to exhibit it to the intending purchaser, and to exhibit it means that he point out its boundaries. So, if the present case must rest on the principle that the agent had authority only to procure a purchaser, the principal would be bound by the representation as to the area and boundaries of the land.

Assuming, as appellants contend, that the realtor Goodwin had authority only to procure a purchaser, nevertheless, the appellants would be bound by their agent's representation as to the area of the land offered for sale. This is particularly so when the appellants sellers gave the realtor a listing agreement which contained the notation, "30 acres

more or less." As pointed out by our Supreme Court in *Larson v. Bear*, 38 Wn.2d 485, 490, 230 P.2d 610 (1951):

> Another rule applicable to cases of this kind is that a power given an agent to perform a particular service carries with it the authority to do whatever is usual and necessary to carry into effect the principal power. *Johns v. Jaycox*, 67 Wash. 403, 121 Pac. 854; *Yarnall v. Knickerbocker Co.*, 120 Wash. 205, 206 Pac. 936.

Once having hired the realtor to sell his land, he is the owner's agent. *Frisell v. Newman*, 71 Wn.2d 520, 429 P.2d 864 (1967). And, having indicated the quantity of land contained, appellants' agent was empowered to indicate to a prospective purchaser the amount of acreage for sale. This authority is implied as being usual and necessary to carry into effect the principal power or authorization to sell the property. The trial court correctly found that the realtor's acts in representing the land in question to contain "30 acres more or less" to the respondent buyer are the acts of his principal, the sellers.

■ Appellants' final argument is that the trial court used an improper measure or method in computing damages. Appellants argue that if a claim of fraud was established, it was based upon an honest mistake, and in such circumstances the "out-of-pocket" rule should apply as the proper measure of damages. In *Algee v. Hillman Inv. Co.*, 12 Wn.2d 672, 123 P.2d 332 (1942), our Supreme Court held a seller responsible when the misrepresentation as to the quantity of land sold was a result of an honest mistake with no intent to deceive. This is consistent with decisions dating back to the early leading case of *Hanson v. Tompkins*, 2 Wash. 508, 510, 27 P. 73 (1891), where the court stated:

> If the defendants relied upon the representations of the plaintiff, and were led to believe by such representations that lot 2 contained 36½ acres, when in fact it only contained 26½ acres, and were induced by such representations to purchase said lot as a lot of 36½ acres, it makes no difference whether plaintiff knew such representations to be false or not, he is liable. If he knew the lot did not contain 36½ acres, and represented to defend-

ants that it did, he would be guilty of fraud and deceit; but if he did not know it, and believed that the representations he made were true, and defendants, acting upon such representations, were damaged because it eventuated that they were not true, the liability of the plaintiff would be the same.

In *Dixon v. MacGillivray, supra* at pages 35, 37, the court stated:

> One who indicates to a purchaser that the land sold has a certain area, when, as a matter of fact, the area is less than represented, is responsible to the purchaser in damages or in an action of rescission, even though he acted under an honest mistake without any intent to deceive. *Algee v. Hillman Inv. Co.*, 12 Wn. (2d) 672, 123 P. (2d) 332.
>
> . . .
>
> The measure of damages in the case at bar is the difference between the market value of property had it been as represented and the market value of property as it actually was at the time of the sale. *Grosgebauer v. Schneider*, 177 Wash. 43, 31 P. (2d) 90.

The "benefit of the bargain" rule was applied in *Salter v. Heiser*, 39 Wn.2d 826, 239 P.2d 327 (1951), even though it was recognized that this was not the exclusive measure of damages. The court here found on substantial evidence that the property was worth $1,300 per acre at the time of the purchase, and that sum multiplied by the deficiency in acreage equaled the damages plus the interest improperly paid. We find no error in the method used to ascertain damages.

Judgment affirmed.

FARRIS and WILLIAMS, JJ., concur.